**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Casey Howard, et al., | No. CV-19-00513-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Web.com Group Incorporated, | |
| Defendant. | |

Before the Court is the parties' Joint Motion for Preliminary Approval of Class Action Settlement and FLSA Collective Action.  (Doc. 39).  The parties are asking the Court to: (1) conditionally certify the class for settlement; (2) appoint Named Plaintiffs Casey Howard, Phil Martinez, Lori Astwood, and Ben Azar as class representatives; (3) appoint Plaintiffs' counsel, Austin Anderson and Clifton Alexander, as class counsel; (4) preliminarily approve the proposed settlement agreement; (5) approve the proposed class notice; (6) set a Fairness Hearing; and (7) approve the FLSA collective action settlement. (*Id.*)

## I.      BACKGROUND

Defendant Web.com Group Incorporated ("Defendant") is a for-profit company based in Jacksonville, Florida and provides domain registration and web development services.  (Doc. 39 at 5).  Defendant operates call centers throughout the United States, including in Arizona, Pennsylvania, and Washington.  (*Id.*)  Plaintiffs Casey Howard ("Mr. Howard"), Phil Martinez ("Mr. Martinez"), Lori Astwood ("Ms. Astwood"), and Ben Azar

("Mr. Azar") (collectively "Named Plaintiffs" or "Plaintiffs") were hourly call-center employees in Defendant's call centers[1] and allege that they were not compensated for all of the hours they worked—specifically including time spent on preliminary pre-shift start-up activities.  (Doc. 36 ¶¶ 2-4, 35-47).

Plaintiffs initiated this action on January 30, 2019 (Doc. 1); they filed a First Amended Complaint on February 28, 2019 (Doc. 12) and a Second Amended Complaint ("SAC") on September 10, 2019 (Doc. 36).  Plaintiffs' hybrid class and collective action SAC asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, to recover their unpaid overtime compensation and statutorily prescribed penalties.  (*Id.* ¶¶ 48-76).  In addition to their FLSA claims, Plaintiffs further allege state-law claims for those current and former hourly call-center employees who worked in Arizona,[2] Pennsylvania,[3] and Washington.[4]  (*Id.* ¶¶ 77-135).  Additionally, Plaintiffs allege that they did not perform work that meets the definition of exempt work under the FLSA or Arizona, Pennsylvania, or Washington state law.  (*Id.* ¶ 8).  Plaintiffs' FLSA claims are asserted as a collective action under Section 216(b) of the FLSA, while their state law claims are asserted as a class action under Federal Rule of Civil Procedure 23(b)(3) ("Rule 23").  (*Id.*)  On November 18, 2019, the parties notified the Court that they settled this action and filed this Joint Motion.  (Doc. 39).

## II.    Settlement Agreement

Pursuant to the Settlement Agreement, Plaintiffs seek to certify a settlement class that is comprised of three settlement subclasses ("State Law Classes") defined as follows:

---

[1] Mr. Howard and Mr. Martinez worked at a call center in Arizona, Ms. Astwood worked at a call center in Pennsylvania, and Mr. Azar worked at a call center in Washington.  (Doc. 36 ¶¶ 14-17).

[2] Arizona statutory claims for unpaid wages pursuant to the Arizona Fair Wages and Healthy Families Act ("Arizona Act"), A.R.S. §§ 23-350, *et. seq.*  (Doc. 36 ¶¶ 77-96).

[3] Pennsylvania statutory claims for unpaid wages pursuant to the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*  (Doc. 36 ¶¶ 97-115).

[4] Washington statutory claims for unpaid wages pursuant to the Washington Wage Statutes ("Washington Acts"), RCW 49.46.020, RCW 49.46.130, and RCW 49.52.050–.070.  (Doc. 36 ¶¶ 116-35).

1   (1) the "Arizona Class Action Members" includes all hourly call-center[5] employees who

2   were employed by Web.com in the State of Arizona, at any time from January 30, 2018,

3   through the final disposition of this matter; (2) the "Pennsylvania Class Action Members"

4   includes all hourly call-center employees who were employed by Web.com in the State of

5   Pennsylvania, at any time from February 28, 2016, through the final disposition of this

6   matter; (3) the "Washington Class Action Members" includes all call-center workers

7   employed by Web.com in Spokane, Washington, at any time from May 23, 2016, though

8   the final disposition of this matter, except for Carl V. Jehle.[6]   (Doc. 39 at 7, 19).  The parties

9   represent that there are approximately 982 individuals included in the three State Law

10  Classes.  (*Id.* at 19).

11        Additionally, the parties have proposed an FLSA Collective Action that includes

12  the Named Plaintiffs; all hourly call-center employees who were employed by Defendant

13  from January 30, 2016, through final disposition of this case, excluding Carl V. Jehle, that

14  complete a Claim Form; State Law Class members that complete a Claim Form; and the

15  individuals identified in Exhibit A (Doc. 39-1 at 46-47) ("Opt-in Plaintiffs") to the

16  proposed Settlement Agreement ("Settlement Agreement").  (Doc. 39-1 at 5-6).   The

17  members of the State Law Classes and the FLSA Collective Action are collectively referred

18  to as the "Settlement Class".

19        Under the Settlement Agreement, Defendant would pay a maximum settlement

20  amount of $500,000.00 ("Settlement Fund").  (Doc. 39 at 7).  The Settlement Agreement

21  provides for the following allocation of the Settlement Fund: (1) up to $30,000.00 to the

22  claims administrator, ILYM Group, Inc.; (2) $10,000.00 to the four class representatives[7];

23  (3) $125,000.00 to be paid to class counsel in attorney's fees; and (4) estimated litigation

---

24  [5] Exhibit B to the Settlement Agreement lists the job titles that are considered to be hourly
25  call-center employees. (Doc. 39-1 at 48-57).

26  [6] "Carl V. Jehle had previously filed his pre-notice consent to join this litigation and
    subsequently requested that it be withdrawn as he no longer desired to continue as a party
27  plaintiff."  (Doc. 39 at 7 n.3).

28  [7] The four Named Plaintiffs have been proposed as the class representatives.  Pursuant to
    the Settlement Agreement, each of the four will receive an incentive award of $2,500.00
    for a total of $10,000.00.  (Doc. 39 at 10).

1   costs of up to $25,000.00.  (*Id.* at 6–12).  After these deductions from the Settlement Fund,

2   each member of the Settlement Class will receive their pro rata share of the Settlement

3   Fund based on their workweeks—a number unique to each class member calculated based

4   on the number of weeks he or she worked during the relevant period.  (Doc. 39-1 at 19).

5   The parties estimate that the average settlement received by the Settlement Class will be

6   $94.00.  (*Id.* at 18).  Unclaimed payments will be returned to Defendant.  (*Id.* at 14).

7   **II.    LEGAL STANDARDS**

8           The parties seek preliminary certification and approval of the proposed FLSA

9   collective action settlement under 29 U.S.C. § 216(b) and the proposed class action

10  settlement under Rule 23(e) of the Federal Rules of Civil Procedure.  Although "hybrid

11  actions" involving Rule 23 and FLSA collective actions are not prohibited, such combined

12  actions may cause confusion to potential class members.  As the Ninth Circuit has noted,

13  "[u]nder the FLSA, a potential plaintiff does not benefit from (and is not bound by) a

14  judgment unless he or she affirmatively 'opts-in' to the lawsuit . . . . This rule is in contrast

15  to the typical Rule 23 class action, where a potential plaintiff must opt out to be excluded

16  from the class."  *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 528 (9th Cir.

17  2013).  The notice of settlement, and the documents to be completed by the class members

18  to "opt-in" or "opt-out" of the settlement, and to submit claims must adequately inform the

19  class members of their respective rights under the FLSA and Rule 23.  *Id*. at 529–30.

20          Rule 23(e) establishes the following procedures for approving a class action

21  settlement: (1) the court must direct notice in a reasonable manner to all class members

22  who would be bound by the proposal; (2) if the proposal would bind class members, the

23  court must approve it only after a hearing and on finding that it is fair, reasonable and

24  adequate; (3) the parties seeking approval must file a statement identifying any agreement

25  made in connection with the proposal; (4) if the class action was previously certified under

26  Rule 23(b)(3), the court may refuse to approve the settlement unless it affords a new

27  opportunity to request exclusion to individual class members who had an earlier

28  opportunity to request exclusion but did not do so; and (5) any class member may object

- 4 -

to the proposal if it requires court approval.

The approval of a class action settlement pursuant to Rule 23 takes places in two stages.  First, the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class.  *Chavez v. Lumber Liquidators Inc*., 2015 WL 2174168, at *3 (N.D. Cal. May 8, 2015).  "At this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'"  *Murillo v. Pac. Gas & Elec. Co*., 266 F.R.D. 468, 470 (E.D. Cal. 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)). "The court is really only concerned with 'whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys . . . .'" *Id*. (citing *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006)).  Once the court is satisfied as to the certifiability of the class and the results of the initial inquiry into fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members.  At the final fairness hearing, the court entertains class members' objections to (1) the treatment of the action as a class action and/or (2) the terms of the settlement.  The court then makes a final determination whether the parties should be allowed to settle the case pursuant to the terms of the proposed settlement.  *Id*. (citing Manual for Complex Litigation, Fourth, § 21.633 (2004); *Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

Before approving the settlement of an FLSA collective action, courts must undertake an inquiry similar to that required for Rule 23 class action settlements.  The requirements for approval of a FLSA collection action settlement are less stringent, however, because persons who do not opt-in as parties to the FLSA collective action are not bound by the settlement.  *Millan v. Cascade Water Services, Inc*., 310 F.R.D. 593, 607 (E.D. Cal. 2015).  Most district courts in the Ninth Circuit evaluate a proposed FLSA settlement under the standard established in *Lynn's Food Stores, Inc. v. United States*, 679

F.2d 1350, 1355 (11th Cir. 1982), which requires that the settlement constitute a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Gonzalez–Rodriguez v. Mariana's Enterprises,* 2016 WL 3869870, at *3 n. 1 (D. Nev. July 14, 2016) (citing district court decisions from the Southern and Northern Districts of California and the District of Arizona). Some courts adopt the factors for approving a Rule 23 class action settlement even though some factors will not apply due to differences between FLSA actions and Rule 23 class actions. *Khanna v. Intercon Security Systems, Inc*., 2014 WL 1379861, at *6 (E.D. Cal. April 8, 2014).

## II.     DISCUSSION

As the parties correctly recognize, certification of a FLSA collective action and a Rule 23 wage and hour class action must be analyzed as separate analytical steps. This Order will discuss: (A) certification of the Rule 23 class action; (B) certification of the FLSA collective action; and (C) the appropriateness of the Settlement Agreement, including the notice, release, and claim plan.

### A.     <u>Rule 23 Class Action Certification</u>

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, where, as here, "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003). Federal courts must pay "undiluted, even heightened, attention" to class certification requirements in a settlement context. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003). The parties cannot "agree to certify a class that clearly leaves any one requirement unfulfilled," and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement. *Berry v. Baca*, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005).

Before a court may evaluate a class action settlement under Rule 23(e), the

settlement class must meet the requirements of Rules 23(a) and (b). Rule 23(a) lists four criteria that must be met to certify a class action: (1) numerosity; (2) commonality of law or fact; (3) typicality of the representative plaintiff's claims; and (4) adequacy of representation. A class may only be certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). The burden is on the party seeking class certification to show that these elements have been met. *Doninger v. Pac. N.W. Bell, Inc*., 564 F.2d 1304, 1308 (9th Cir. 1977).

Once Rule 23(a) is satisfied, the putative class must then fulfill the predominance and superiority requirements of Rule 23(b)(3). If subsections (a) and (b) are satisfied, the Court will evaluate whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(1)(C).

### 1. *Rule 23(a) Numerosity*

The proposed class must be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23's requirement that "the class be so numerous that joinder of all members is impractical does not mean that joinder must be impossible, but rather means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable." *In re Itel Sec. Litig*., 89 F.R.D. 104, 112 (N.D. Cal. 1981); *accord Baghdasarian v. Amazon.com, Inc*., 258 F.R.D. 383, 388 (C.D. Cal. 2009) (defining "impracticability" as when joinder of all class members is "difficult or inconvenient"); *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 594 (E.D. Cal. 2008) (holding that "an attempt to join all parties must only be difficult or inconvenient" to satisfy Rule 23(a)(1)) (citing *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir. 1964)).

No specific numerical threshold is required. *General Tel. Co. v. E.E.O.C*., 446 U.S. 318, 330 (1980). Instead, it "requires examination of the specific facts of each case and imposes no absolute limitations." *Id.* That said, generally, forty or more members will satisfy the numerosity requirement. *Collins v. Cargill Meat Solutions Corp.,* 274 F.R.D.

294, 300 (E.D. Cal. 2011).  The parties provide that there are approximately 982 individuals in the three State Law Classes.  (Doc. 39 at 19).  Thus, the numerosity requirement is satisfied.

### 2.    *Rule 23(a) Commonality*

A class has sufficient commonality "if there are questions of fact and law which are common to the class."  Fed. R. Civ. P. 23(a)(2).  Because "[t]he Ninth Circuit construes commonality liberally," "it is not necessary that all questions of law and fact be common." *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at \*3 (E.D. Cal. June 13, 2006) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).  The commonality requirement is met "when the common questions it has raised are apt to drive the resolution of the litigation . . . ."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (internal quotation and citation omitted).  In the wage and hour context, the inquiry is whether the entire class was injured by the same allegedly unlawful wage and hour practice. *See Arredondo v. Delano Farms Co*., 301 F.R.D. 493, 513 (E.D. Cal. 2014).

Plaintiffs allege Defendant had a company-wide policy of not paying hourly call-center employees for "start-up" time before their respective shifts started.  (Doc. 39 at 5, 22).  Accordingly, as all of the individuals in the State Law Classes seem to have been subject to the same allegedly unlawful wage and hour practice, this Court finds a common nucleus of facts and potential legal remedies dominates this litigation.  While members of the State Law Classes will be entitled to different damages based on the number of hours they worked without compensation, these individual issues do not overcome the fact that common questions present a significant aspect of the case and can be resolved on a representative rather than individual basis.  Thus, Plaintiffs have established sufficient commonality.

### 3.    *Rule 23(a) Typicality*

The requirement of typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). Typicality requires that class representatives "possess the same interest and suffer the same

injury" as the putative class.  *Falcon*, 457 U.S. at 156.  Representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and citation omitted).  This ensures that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Falcon*, 457 U.S. at 158 n.13.

As previously noted, Plaintiffs claim Defendant had a policy of refusing to pay hourly call-center employees for the "start-up" time before their respective shifts started. (Doc. 39 at 22-23).  Although potentially different in extent from the State Law Class members, Plaintiffs appear to have suffered the same injury—failure to be compensated for compensable time worked—as the putative class. For purposes of preliminary certification and settlement, Plaintiffs have made an adequate showing that the state law claims are typical to the State Law Classes.

### 4.   *Rule 23(a) Adequacy*

The requirement of adequate representation asks whether the representatives "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts are to inquire: (1) whether the named plaintiffs and counsel have any conflicts of interest with the rest of the potential class members and (2) whether the named plaintiff and counsel will prosecute the action vigorously for the class as a whole.  *See Hanlon*, 150 F.3d at 1020. This adequacy inquiry considers a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."  *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992). "The adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem*, 521 U.S. at 626 n.20.

The examination of potential conflicts of interest in settlement agreements "has long been an important prerequisite to class certification.  That inquiry is especially critical when [ ] a class settlement is tendered along with a motion for class certification."  *Hanlon*, 150 F.3d at 1020.  There is nothing in the record to suggest that Plaintiffs have antagonistic interests to the rest of the State Law Classes; rather, Plaintiffs and members of the State Law Classes share a common interest in recovering their unpaid wages.  (Doc. 39 at 23).  Additionally, there is no question that Plaintiffs' counsel has extensive experience in litigating wage and hour class actions.  (Doc. 39-3).

The second prong of the adequacy inquiry examines the vigor with which Plaintiffs and their counsel have pursued the common claims.  "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation."  *Hanlon*, 150 F.3d at 1021.  Probing Plaintiffs and their counsels' rationale for not pursuing further litigation, however, is inherently more complex.  "District courts must be skeptical of some settlement agreements put before them because they are presented with a 'bargain proffered for . . . approval without the benefit of an adversarial investigation.'"  *Hanlon*, 150 F.3d at 1022 (quoting *Amchem*, 521 U.S. at 620).

Plaintiffs provide that they diligently litigated this action from filing to mediation and, after substantial investigation and analysis, negotiated a fair settlement with the assistance of a third-party mediator.  Thus, the Court finds that, to date, Plaintiffs and their counsel have prosecuted this action vigorously on behalf of the class and there is nothing to suggest that this vigorous representation will not continue.  The Court, therefore, finds that the adequacy of representation requirement has been met.

### 5.    *Rule 23(b)(3) Predominance*

"[T]he focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues."  *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 663 (E.D. Cal. 2008).  Where common questions present a significant aspect of the case and are able to be resolved for all class members in a single action, the case can be handled on a representative

rather than individual basis.  *Id.*

The primary injuries to the members of the State Law Classes appear to be largely identical and are all alleged to be the result of an overarching policy.  Although the scope of the damages will vary from individual to individual, the determination of whether the policies at issue actually violate state law will answer a bulk of the inquiry before the Court. Especially in light of the fact that the parties have agreed to a settlement, the common issues appear to predominate over the required individual inquiries.  The Court, therefore, finds that common questions of law and fact predominate.

### 6.  *Rule 23(b)(3) Superiority*

Rule 23(b)(3) provides that courts should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).  The fact that the parties have reached a settlement is relevant to consideration of these factors and when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems [under Rule 23(b)(3)(D)], for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.  However, "other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions— demand undiluted, even heightened, attention in the settlement context." *Id.*

Plaintiffs argue that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy because there is no evidence that members of the State Law Classes would have any interest in maintaining this litigation in separate actions.  (Doc. 39 at 26).  Moreover, Plaintiffs provide that the benefits of concentrating the claims in this action are evident because Defendant has consented to this Court's jurisdiction and the action allows for the resolution of claims across multiple states.  (*Id.*) Further, this Court is unaware of any concurrent litigation begun by any of the other

putative class members regarding Defendant's payment practices.  A class action appears to be the superior method of adjudicating the state law claims.

### 7.    *Conclusion*

Because Plaintiffs have satisfied all of the Rule 23(a) criteria and the Rule 23(b)(3) predominance and superiority requirements, the three State Law Classes are preliminarily certified.

### B.    **FLSA Collective Action**

Plaintiffs also request that this matter be certified as a collective action under the FLSA.  (Doc. 39 at 29-32).  The FLSA was enacted to protect workers from substandard wages and oppressive working hours.  *See Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728, 739 (1981).  Under the FLSA, "one or more employees" may file a civil action—termed a collective action—"in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Unlike a class action under Rule 23, to participate in the collective action, an employee is required to give his consent in writing to become a party.  29 U.S.C. § 216(b); *see Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (rights in a collective action under the FLSA are dependent on the employee receiving accurate and timely notice about the pendency of the collective action, so that the employee can make informed decisions about whether to participate).  "If an employee does not file a written consent, then that employee is not bound by the outcome of the collective action."  *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006).  "When the parties seek settlement approval of an FLSA collective action claim before seeking certification of a collective action, courts in this circuit first consider whether certification is appropriate and then whether the proposed settlement is substantively acceptable."  *Kempen v. Matheson Tri-Gas, Inc*., 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); *Tijero v. Aaron Bros., Inc*., 301 F.R.D. 314, 322–34 (N.D. Cal. 2013).

The Ninth Circuit's recent decision in *Campbell v. City of Los Angeles* provides guidance on what "similarly situated" means in the FLSA context.  903 F.3d 1090, 1110–

17 (9th Cir. 2018).  According to the Ninth Circuit, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id*. at 1117.  *Campbell* specified a two-step approach for determining whether a FLSA collective action may proceed.  In the first step, the plaintiff moves for preliminary certification and the district court applies a "lenient [standard] . . . loosely akin to a plausibility standard," with the analysis "focused on a review of the pleadings but [ ] sometimes [ ] supplemented by declarations or limited other evidence." *Id*. at 1109.  If granted, "preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Id*.  In the second step, typically following discovery, the employer may move for decertification, showing the "similarly situated" requirement has not been satisfied, prompting the court to "take a more exacting look at the plaintiffs' allegations and the record." *Id*.

Applying the *Campbell* framework, the Court finds that preliminary certification of the FLSA Collective Action is appropriate.  Plaintiffs define the Collective Action here as the Named Plaintiffs; all hourly call-center employees who were employed by Defendant from January 30, 2016, through final disposition of this case, excluding Carl V. Jehle, that complete a Claim Form; State Law Class members that complete a Claim Form; and the Opt-in Plaintiffs.  (Doc. 39-1 at 5-6).  The parties provide that the members of the FLSA Collective Action are similarly situated because they were all employed in similar positions and were subject to Defendant's pattern, practice, and policy of failing to pay the proper amount of overtime compensation for all hours worked.  (Doc. 36 at 12-14).  At this preliminary stage, the Court is satisfied that the "putative 'party plaintiffs are alike in ways that matter to the disposition of their FLSA claims,' as they held similar jobs with similar functions and were uniformly subject to [Defendant's] compensation policies that led to the alleged FLSA violations here, presenting 'similar issue[s] of law or fact material to the disposition of their FLSA claims.'" *Smothers v. NorthStar Alarm Servs., LLC*, 2019 WL 280294, at *8 (E.D. Cal. Jan. 22, 2019) (quoting *Campbell*, 903 F.3d at 1117).

1   For the foregoing reasons, the Court will preliminarily certify the FLSA Collective

2   Action.

3         **C.**     <u>**Preliminary Settlement Approval**</u>

4   Rule 23(e) requires the Court to determine whether a proposed settlement is

5   "fundamentally fair, adequate and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959

6   (9th Cir. 2003) (internal quotations omitted).  In making this determination, a court may

7   consider what are termed the *Churchill* factors: (1) the strength of the plaintiff's case; (2)

8   "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of

9   maintaining class action status throughout the trial"; (4) "the amount offered in settlement";

10  (5) the extent of discovery completed, and the stage of the proceedings; (6) "the experience

11  and views of counsel"; (7) "the presence of a governmental participant"; and (8) "the

12  reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. Gen.*

13  *Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Moreover, "the settlement may not be the product

14  of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

15  454, 458 (9th Cir. 2000).

16  Because some of the *Churchill* factors cannot be fully assessed until the final

17  fairness hearing, courts sometimes opt for a more curtailed fairness assessment, reasoning

18  that "a full fairness analysis is unnecessary at this stage." *See Alberto v. GMRI, Inc.*, 252

19  F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotations omitted).  Instead, courts at the

20  preliminary hearing stage tend to consider only whether the proposed settlement "(1)

21  appears to be the product of serious, informed, non-collusive negotiations; (2) has []

22  obvious deficiencies; (3) [] improperly grant[s] preferential treatment to class

23  representatives or segments of the class; and (4) falls within the range of possible

24  approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (citations

25  omitted).

26  Similar considerations pertain to settling collective actions under the FLSA.  "FLSA

27  claims may not be settled without approval of either the Secretary of Labor or a district

28  court." *Semiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (citing *Nall*

*v. Mal-Motels, Inc*., 723 F.3d 1304, 1306 (11th Cir. 2013)).  Courts within the Ninth Circuit generally apply the Eleventh Circuit standard, which asks whether the settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Nall*, 723 F.3d at 1308 n.3.  "In conducting this inquiry, courts often turn to factors relied on in preliminary certification of Rule 23 class actions to the extent those factors apply to FLSA actions."  *Smothers*, 2019 WL 280294, at *9 (citing *Maciel v. Bar 20 Dairy, LLC*, 2018 WL 5291969, at *4 (E.D. Cal. Oct. 23, 2018)).

Courts must evaluate the "settlement as a whole, rather than assessing its individual components."  *Lane v. Facebook, Inc*., 696 F.3d 811, 818 (9th Cir. 2012).  As a corollary, it is not the Court's role to "delete, modify or substitute certain provisions" of the settlement.  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Rather, "[t]he settlement must stand or fall in its entirety."  *Id*.

Having reviewed the parties' Motion, the terms of the Settlement Agreement, and the Notice of Class and Collective Action Settlement ("Notice"), the Court concludes that there are issues concerning the Settlement Agreement and the Notice that will require modification, and consequently, the Court will deny the preliminary approval of the Settlement Agreement.  Indeed, the flaws in the Settlement Agreement demonstrate why the question of whether a Rule 23 class action can co-exist with a related FLSA collective action has divided district courts in the Ninth Circuit.  *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1093 (9th Cir. 2011) (recognizing the split between district courts in the Ninth Circuit, but declining to address the issue because the plaintiff abandoned the FLSA claim).  These deficiencies must be remedied in any subsequent motion for preliminary approval of a settlement.

First, the Settlement Agreement does not separate the Settlement Fund based on claims; rather, it simply proposes to distribute payments with respect to all of the claims based on weeks worked by the members of the Settlement Class.  Without separate

settlement funds, it is unclear to the Court whether a State Law Class member will receive additional compensation if he or she chooses to opt-in to the FLSA Collective Action.  A release of FLSA claims in exchange for no consideration is not "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  29 U.S.C. § 216(b).  As a result, courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims.  *Millan v. Cascade Water Services, Inc.,* 310 F.R.D. 593, 602 (E.D. Cal. 2015); *see also Thompson v. Costco Wholesale Corp.*, 2017 WL 697895, at *7-8 (S.D. Cal. Feb. 22, 2017) (denying preliminary approval due to "suspect" opt-in structure and noting that "courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims"); *Khanna v. Intercon Sec. Systems, Inc*., 2014 WL 1379861, at *2 (E.D. Cal. Apr. 8, 2014) (approving hybrid settlement that allocated two-thirds of net settlement amount to state claims and one-third of net settlement amount to FLSA claims); *Pierce v. Rosetta Stone, Ltd*., 2013 WL 1878918, at *3 (N.D. Cal. May 3, 2013) (same).  If Defendant wants a release of a bona fide FLSA claim, it should have to pay fair and reasonable consideration for that release.

Second, the Notice is inadequate. In an FLSA action, "the court must provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate.'" *Adams v. Inter-Con Sec. Sys*., 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting *Hoffmann-La Roche,* 493 U.S. at 170).  In light of this requirement, and because of the inherent differences between Rule 23 class actions and FLSA collective actions, courts considering approval of settlements in these hybrid actions consistently require class notice forms to explain: "(1) the hybrid nature of th[e] action; and (2) the claims involved in th[e] action; (3) the options that are available to [the State Law] Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collection action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing."

*Pierce*, 2013 WL 1878918 at *4; *see also Sharobiem*, 2015 WL 10791914, at *4 (noting that because the proposed claim form did not distinguish between a Rule 23 class action and FLSA class action, it was "not clear and easy to follow").

In this action, the Notice of Class and FLSA Collective Action Settlement (Doc. 39-2 at 2-6) explains that state and federal claims are at issue in this action.  (*Id.* at 2). However, the Notice does not explain the difference between a class action and a collective action.  Additionally, it does not explain the scope of released claims for the members of the State Law Classes and the FLSA Collective Action.  Most significantly, however, it does not appear to provide any mechanism for a recipient to participate in the State Law Class but not opt in to the FLSA Collective Action.  Instead, it gives the false—all or nothing—option to either (a) opt-out of the State Law Class and the FLSA Collective Action or (b) submit a claim and recover for both the FLSA claim and the Rule 23 claims. In other words, the Notice does not explain the hybrid nature of this case and does not adequately explain the option to exhaust only the FLSA claim or only the State Law claims. To remedy this deficiency, if the parties wish to continue with a settlement of both State Law and FLSA claims, any notice must: (1) explain how much of the settlement amount will be paid for the release of the FLSA claims; (2) explain and provide a mechanism for recipients to opt-in to the collective action that complies with the FLSA; and (3) explain the consequences of opting into the FLSA collective, opting out of the Rule 23 class, or doing nothing.

Third, and related to the previous issue, the Settlement Agreement and the Notice appear to require members of the State Law Classes to submit a Claim Form in order to receive a settlement payment.  (Doc. 39-1 at 32; Doc. 39-2 at 4).  The parties have muddled the distinction between the mandatory opt-out procedure of a Rule 23 class action and the mandatory opt-in procedure of an FLSA collective action.  *See Thorpe v. Abbott Laboratories, Inc*., 534 F. Supp. 2d 1120, 1123 (N.D. Cal. 2008).  To provide clarity, a party seeking class certification pursuant to Rule 23(b)(3) must give notice to any putative class member "that the court will exclude from the class any member who requests

exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v).  It does not require a class member opt-in to the class action.  As noted by the Federal Judicial Center, a claims process is not necessary in all cases: "In too many cases, the parties may negotiate a claims process which serves as a choke on the total amount paid to class members. When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms."  *De Leon v. Bank of Am., N.A.*, 2012 WL 2568142, at *20 (M.D. Fla. Apr. 20, 2012) (quoting 2010 version of the "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" produced by the Federal Judicial Center); *see Otey v. CrowdFlower, Inc.*, 2015 WL 4076620 (N.D. Cal. July 2, 2015) (having previously rejected a claim procedure, the court approved a claims process paying settlements directly to class members concurrent in time with the notice provided).

In this instance, Defendant has all of the information necessary to process claims to the 982 individuals in the State Law Classes (Doc. 39 at 19); *i.e.*, Defendant possesses a record of the number of hours worked by each of the 982 employees in the relevant time period, the rate at which each worked, and the aggregate hours worked by all class members during the same period.  Thus, requiring submission of a claim form by the identified 982 individuals regarding the Rule 23 class appears to serve no legitimate purpose.[8]

Fourth, the Court is concerned that a portion of the Settlement Fund is reversionary.  Specifically, the Settlement Agreement provides that, if any settlement check remains uncashed after 180-days, the amount of the settlement check shall be returned to Defendant.  (Doc. 39-1 at 32).  Other courts in the Ninth Circuit have noted, and this Court agrees, that where "a statute's objectives include deterrence, as does the FLSA's, 'it would contradict these goals to permit the defendant to retain unclaimed funds.'"  *Khanna v. Inter–Con Sec. Sys. Inc.*, 2012 WL 4465558, at *11 (E.D. Cal. 2012) (quoting, inter alia, *Six (6) Mexican*

---

[8] The claims process set out by the parties does serve a purpose as to the FLSA action.  As earlier indicated, the FLSA requires collective action members to give "consent in writing to become a party" and for such consent to be "filed in the court in which such action is brought."  29 U.S.C. § 216(b).  Such a process should be preserved in any future motion for approval of class settlement.

*Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990)); *see La Parne v. Monex Deposit Co*., 2010 WL 4916606, at *4 (C.D. Cal. Nov. 29, 2010) ("Relatively low interest in settlement does not mean that [a] [d]efendant should receive a windfall benefit as a result of absent class members failing to submit claims" in light of the deterrent goals of the FLSA). If unclaimed funds are to revert to Defendant, the parties should explain why those funds should revert to Defendant. *See Dudum v. Carter's Retail, Inc*., 2015 WL 5185933, at *3 (N.D. Cal. Sept. 4, 2015) (citing *Flores v. Alameda Cnty. Indus. Inc*., 2015 WL 3763605, at *3 (N.D. Cal. June 16, 2015). The parties have made no attempt to do so in their Motion.

## III.   CONCLUSION

The Count will conditionally certify the State Law Classes and conditionally certify the FLSA Collective Action. However, the Court is unconvinced that the Settlement Agreement falls within the range of possible approval. In order for the Settlement Agreement to be preliminarily approved, the following must be addressed: (1) the Settlement Agreement must create separate funds for payment of the Rule 23 claims and the FLSA claims; (2) the Notice must explain the hybrid nature of this case and explain the option for a member of the State Law Class to exhaust only the FLSA claim or only the State Law claims; (3) the settlement must eliminate the claim form submission requirement for the Rule 23 class members presently employed by Defendant or explain the need for it; and (4) the portion of the settlement attributed to FLSA violation cannot revert to the Defendant if unclaimed; the parties may remove the reversion entirely or name an appropriate *cy pres* recipient for unclaimed funds.

Accordingly,

**IT IS ORDERED** that the parties' Joint Motion for Preliminary Approval of Class Action Settlement and FLSA Collective Action (Doc. 39) is **GRANTED in part** and **DENIED in part** as follows:

1)      The State Law Classes are conditionally certified;

2)      The FLSA Collective Action is conditionally certified;  and

3)      Preliminary approval of the Settlement Agreement is denied.  The parties are granted forty-five (45) days from the date of this Order to file an amended motion for approval of class and collective action settlement addressing the issues discussed herein. The parties are not required to discuss class or collative action certification in the amended motion.

Dated this 8th day of July, 2020.

_____
Honorable Diane J. Humetewa
United States District Judge