**LUBIN & ENOCH, P.C.**
Nicholas J. Enoch
Arizona Bar No. 016473
Stanley Lubin
Arizona Bar No. 003076
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email: nick@lubinandenoch.com

**ANDERSON ALEXANDER, PLLC**
Austin W. Anderson (*Admitted Pro Hac Vice*)
Email: austin@a2xlaw.com
Clif Alexander (*Admitted Pro Hac Vice*)
Email: clif@a2xlaw.com
819 North Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Fax: (361) 452-1284

Attorneys for Plaintiffs


Gerald L. Maatman, Jr. (*pro hac vice*)
Matthew J. Gagnon (*pro hac vice*)
Seyfarth Shaw LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
Email: gmaatman@seyfarth.com
Email: mgagnon@seyfarth.com

Attorneys for Defendant Web.Com Group, Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Casey Howard, Phil Martinez, Lori Astwood, and Ben Azar, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Web.com Group, Inc.,<br>A Florida Corporation,<br><br>Defendant. | No.2:19-cv-00513<br><br>AMENDED JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FLSA COLLECTIVE ACTION |

**TO THE HONORABLE DIANE J. HUMETEWA:**

Plaintiffs Casey Howard, Phil Martinez, Lori Astwood, and Ben Azar, individually and on behalf of all others similarly situated, ("Plaintiffs and Class Members") and Defendant Web.com Group, Inc. ("Web.com") (collectively, the "Parties"), file this Amended Joint Motion for Preliminary Approval of Class Action Settlement and FLSA Collective Action. The Parties respectfully move this Court to preliminarily certify the proposed Rule 23 Class identified herein for the purpose of settlement, approve the Amended Class and Collective Action Settlement Agreement And Stipulation ("Agreement") between the Parties, and set a fairness hearing to address the same. The Parties further move this Court to approve the Agreement as to the FLSA collective action. A copy of the Agreement is attached as Exhibit A.

65478175v.1

**I.**

**INTRODUCTION**

This is a proposed collective and class action lawsuit for unpaid overtime wages brought by Plaintiffs Casey Howard, Phil Martinez, Lori Astwood, and Ben Azar, on behalf of themselves and all other similarly situated current and former hourly call-center employees of Web.com, who claim they were not compensated for all of the hours they worked—specifically including time spent on preliminary pre-shift start-up activities. Plaintiffs have alleged claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, to recover their unpaid overtime compensation and statutorily prescribed penalties. In addition to their claims under the FLSA, Plaintiffs further alleged state-law claims for those current and former hourly call-center employees who worked in Arizona, Pennsylvania, and Washington. *See* ECF Nos. 1, 12, and 36.

As explained more fully below, the Parties have negotiated an Agreement that will resolve the claims of the Named Plaintiffs, the Opt-In Plaintiffs, and the Putative Class Members. By this Motion, the Parties are seeking certification, for settlement purposes only, of a settlement class pursuant to Federal Rule of Civil Procedure 23. Specifically, Plaintiffs seek preliminary approval of a settlement class resolving their federal claims and the following state-law statutory claims:

> **Arizona Claims**—Arizona statutory claims for unpaid wages pursuant to the Arizona Fair Wages and Healthy Families Act ("Arizona Act"), A.R.S. §§ 23-350, *et. seq.*;
>
> **Pennsylvania Claims**—Pennsylvania statutory claims for unpaid wages pursuant to the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*; and

65478175v.1

1
2

**Washington Claims**—Washington statutory claims for unpaid wages pursuant to the Washington Wage Statutes ("Washington Acts"), RCW 49.46.020 and .130 and RCW 49.52.050–.070.

3
4

The total amount that Web.com will pay pursuant to the Agreement is $500,000.00,

5

inclusive of attorneys' fees, costs, service awards for the Named Plaintiffs, settlement

6

administration expenses, and payroll taxes. The details of the Agreement are filed herewith

7
8

as Exhibit A. The Parties reached the Agreement after mediating this matter in San

9

Francisco, California before David Rotman, one of the preeminent wage and hour

10

mediators in the United States.

11
12

The Parties believe the Agreement is fair, reasonable, and adequate, and that it

13

satisfies all criteria for settlement approval under binding Ninth Circuit precedent.

14

## II.
### ISSUES PRESENTED

15
16

By this Amended Joint Motion, the Parties ask the Court to: (1) certify the proposed

17

settlement class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in

18
19

connection with the settlement process; (2) appoint Austin Anderson and Clif Alexander

20

of Anderson Alexander, PLLC as Class Counsel for the Proposed Settlement Class for

21

settlement purposes; (3) appoint Casey Howard, Phil Martinez, Lori Astwood, and Ben

22
23

Azar as Class Representatives for the Proposed Settlement Class; (4) approve the Parties'

24

amended proposed Notice(s) of Class and Collective Action Settlement, attached as Exhibit

25

B; (5) set a date by which the Parties must file a motion for final settlement approval and

26

petition for an award of attorneys' fees and costs; (6) schedule the Fairness Hearing; and

27
28

(7) approve the FLSA collective action settlement.

### III.
#### SUMMARY OF FACTS AND PROCEDURAL HISTORY

Web.com is based in Jacksonville, Florida and provides website development and marketing services to its clients through its various call centers throughout the United States. In the last three years, Web.com has operated in Arizona, Pennsylvania, and Washington, among other states. This hybrid wage and hour collective/class action lawsuit was originally filed in the District of Arizona by Casey Howard and Phil Martinez ("Plaintiffs"), individually and on behalf of all other call-center employees who were employed by Web.com at any time from January 30, 2016 through the present. Plaintiffs contend that Web.com did not pay for "start-up" time before their respective shifts started. *See* ECF No. 1. Plaintiffs subsequently amended their complaint, adding Arizona, Pennsylvania, and Washington state law claims as proposed class actions pursuant to Federal Rule of Civil Procedure 23(b)(3). *See* ECF Nos. 12 and 36.

Web.com denies any liability to Plaintiffs and any putative class and/or collective action members for any unpaid back wages or overtime and asserts that its hourly, non-exempt call-center employees were fully and properly compensated under federal and state law.

Since the filing of this lawsuit, seventy-eight current and former non-exempt hourly call-center employees who worked for Web.com in Arizona, Pennsylvania, Washington and Florida have filed their pre-notice consent to join. After exchanging Initial Disclosures pursuant to Federal Rule of Civil Procedure 26, the Parties agreed to mediate this matter in good faith. To facilitate a successful mediation, the Parties further agreed to seek a stay of

65478175v.1

the pending action—a stay this Court granted on May 21, 2019. *See* ECF Nos. 29 and 30, respectively.

On July 22, 2019, the Parties mediated with respected wage and hour mediator, David Rotman, in San Francisco, California. On August 2, 2019, the Parties filed their Notice of Settlement with this Court. *See* ECF No. 32. On November 8, 2019, the Parties filed their Joint Preliminary Motion for Approval of Class Action Settlement and FLSA Collective Action ("Preliminary Approval Motion"). *See* ECF No. 39. On July 8, 2020, this Court entered an order granting in part, and denying in part, the Preliminary Approval Motion.[1] *See* ECF No. 44. The Parties were further ordered to revise the Settlement Agreement to comply with the Court's revisions addressed in the order and to file a compliant Amended Preliminary Approval Motion. The Parties have complied with the Court's order, have revised the Settlement Agreement and Exhibits, and accordingly seek preliminary approval of their Amended Settlement Agreement.

## IV.
### SUMMARY OF THE SETTLEMENT TERMS

### A.    The Settlement Fund

The Parties have agreed to settle this matter for the total gross settlement amount of $500,000.00. Included in that amount is Class Counsel's attorneys' fees and out-of-pocket expenses, settlement administration costs, payroll taxes, and $10,000.00 in service awards

---

[1] By this Court's July 8, 2020 order, the Court preliminarily certified the requested three State Law Classes and the FLSA Collective Action and informed the Parties that further briefing on the issues of class and collective certification need not be addressed. *See* ECF No. 44, pgs. 11 and 13.

65478175v.1

for the four (4) Named Plaintiffs. Attorneys' fees, out-of-pocket-expenses, settlement administration costs, payroll taxes, and service awards shall come out of the gross settlement amount—the remaining funds shall constitute the net settlement fund. The net settlement fund shall be further divided into the FLSA Settlement Fund and the State Law Settlement Fund. Seventy-five percent (75%) of the net settlement fund shall be allocated to the FLSA Settlement Fund and the remaining twenty-five percent (25%) of the net settlement fund shall be allocated to the State Law Settlement Fund. Each of the Settlement Participants will receive their *pro rata* share of the FLSA Settlement Fund and/or the State Law Settlement Fund[2] based on their Workweeks—a number unique to each class member calculated based on the number of weeks he or she worked during the Relevant Period.[3] Importantly, Class Counsel estimates that approximately sixty percent (60%) of the gross settlement amount will be payable to the Settlement Participants directly.[4]

---

[2] To recover from the FLSA Settlement Fund, a putative member of the FLSA collective must submit a valid and timely claim form. To recover from the State Law Settlement Fund, a State Law Class member must not elect to opt out of the Settlement. The Class Members may choose to participate in one, or both of the Settlement Funds, based on their eligibility.

[3] The Settlement Administrator shall distribute funds from settlement checks that are not cashed within 180 days to the *cy pres* recipient approved by this Court.

[4] The sixty percent (60%) estimate does not include a deduction for payroll taxes from the gross settlement amount as that number is calculated by the Settlement Administrator.

**B.    Individuals Included in the Proposed Settlement Class**

The Parties have agreed that the proposed Settlement includes individuals eligible to participate as FLSA Settlement Members, some of whom are also eligible to participate in one or more State Law Classes.  FLSA Settlement Members include:[5]

> [T]he Named Plaintiffs and all hourly call-center employees[6] who were employed by Web.com Group, Inc. and/or its affiliates or subsidiaries ("Web.com") in the United States at any time from January 30, 2016 through the final disposition of this matter, including the Opt-in Plaintiffs, but excluding Carl V. Jehle.

*See* Ex. A, at § III.

The Parties have agreed that the proposed State Law Settlement Class should be comprised of the following State Law Classes:

a.    The "Arizona Class Action Members" means all hourly call-center employees who were employed by Web.com in the State of Arizona, at any time from January 30, 2018 through the final disposition of this matter.

b.    The "Pennsylvania Class Action Members" means all hourly call-center employees who were employed by Web.com in the State of Pennsylvania, at any time from February 28, 2016 through the final disposition of this matter.

c.    The "Washington Class Action Members" means all call-center workers employed by Web.com in Spokane, Washington, at any time from May 23, 2016 though the final disposition of this matter, except for Carl V. Jehle.[7]

---

[5] The Parties have agreed to the conditional certification of an FLSA Collective for purposes of the Settlement Agreement.

[6] See Exhibit B for a list of job titles used for identification of "Call Center Employees."

[7] Carl V. Jehle had previously filed his pre-notice consent to join this litigation and subsequently requested that it be withdrawn as he no longer desired to continue as a party plaintiff.

65478175v.1

*See id.* The members of three State Law Classes and the FLSA Collective, together with the Opt-In Plaintiffs and the Named Plaintiffs, are collectively referred to as the "Settlement Class."

## C.    Allocation Formula

After calculating the total net settlement fund (the amount remaining in the settlement fund after deducting attorneys' fees, costs, service awards, administration costs, and employer-side payroll and other applicable taxes) and dividing the remaining amount into the FLSA Settlement Fund and State Law Settlement Fund as described above, each Named Plaintiff, Opt-in Plaintiff, FLSA Settlement Member, and State Law Class Member ("Settlement Participants") shall receive their pro rata share of the respective Settlement Funds according to the following process.

(1)    75% of the Net Settlement Amount shall be allocated to FLSA Settlement Fund and 25% of the Net Settlement Amount shall be allocated to State Law Settlement Fund;

(2)    Defendant will supply to the Settlement Administrator the number of "Workweeks" worked by each Settlement Participant. "Workweeks" are defined as the total number of days worked divided by 7;

(3)    FLSA Settlement Payment Per Workweek = 75% of Net Settlement Amount/ Total Workweeks worked by FLSA Settlement Members, including Named Plaintiffs;

(4)    State Law Settlement Payment Per Workweek = 25% of Net Settlement Amount / Total Workweeks worked by State Law Class Members.

*See id.* at § IV (10).

Moreover, the Agreement sets forth that fifty percent (50%) of all payments constitute wages and will accordingly be subject to W-2 reporting. Withholdings and normal payroll taxes will be deducted pursuant to state and federal law from this amount.[8] The Parties further agree that the remaining fifty percent (50%) constitutes payment for liquidated damages, prejudgment interest, and penalties, and will be reported on an IRS Form 1099. *See id.*

D.    **Limited Release of Claims**

Each Opt-in Plaintiff, FLSA Settlement Member and/or State Law Settlement Class Member will receive a Notice of Settlement which will include a statement describing the difference between the class and collective claims involved in this litigation, providing instruction for participating (or opting out of) the respective settlements, describing the applicable settlement award and further describing how it is calculated, and describing the scope of the applicable releases for each settlement.[9]

In the event a State Law Class Member fails to return the Opt-Out Request, he or she will receive their allocated settlement award and will release any state-law claims that could have been brought in this lawsuit, as defined in the settlement agreement.[10] Likewise,

---

[8] The employer portion of all such payroll taxes and withholdings shall also come out of the gross settlement fund.

[9] Named Plaintiffs entitled to a service award shall also execute a general release of their claims against Web.com. The general release form is attached as Exhibit D to the Settlement Agreement.

[10] The Settlement Agreement defines Released State Law Claims as "all state law claims that were or could have been asserted in the Second Amended Class Action Complaint through

65478175v.1

in the event a FLSA Settlement Member fails to return a claim form, they will not be entitled to a recovery under the FLSA Settlement Fund and will not release their FLSA claims.

### E.    Attorneys' Fees and Litigation Costs

Consistent with the fee agreement entered into between Plaintiffs and Plaintiffs' Counsel, Plaintiffs' Counsel respectfully request an award of attorneys' fees in the amount of $125,000.00, plus reimbursement of their actual out-of-pocket litigation costs, which shall not exceed $25,000. Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), Plaintiffs' Counsel will file a motion for approval of their attorneys' fees and costs concurrently with the motion for final settlement approval.

### F.    Class Representatives and Service Awards

The Parties request that the Named Plaintiffs, Casey Howard, Phil Martinez, Lori Astwood, and Ben Azar, be appointed as the Class Representatives for the Settlement Class. As part of the Agreement, the Parties have agreed to service awards of $2,500.00 for each Class Representative, for a total of $10,000.00 in service awards. In light of their efforts that resulted in a settlement on behalf of the Plaintiffs, Opt-In Plaintiffs, and Class

---

the date of preliminary approval, including but not limited to any claims for alleged failure to pay the minimum wage, failure to pay overtime wages, or failure to pay for all time worked under the laws of the states of Arizona, Pennsylvania, and Washington (as appropriate), including any claim for liquidated or multiple damages, penalties, restitution, interest, attorneys' fees or costs, declaratory relief, equitable relief, or injunctive relief for any such claims that were or could have been asserted in the Second Amended Complaint through the date of preliminary approval." *See* Ex. A. § IV(5)(b).

Members, and the significant risk to their reputations and future employment, these modest awards are reasonable.

### G.    Settlement Administration

The Parties have elected to retain ILYM Group, Inc., a third-party settlement administrator ("Administrator") to administer the settlement. Under the terms of the Agreement, administration costs and expenses incurred by the Administrator are payable out of the gross settlement fund.[11]

> The Settlement Administrator shall be responsible for: (i) mailing the notice documents required by this Settlement Agreement; (ii) receiving and logging the Claim Forms and Requests for Exclusion; (iii) running up to one skip trace on undeliverable mail; (iv) calculating the amounts allocated for Class Members and Opt-In Plaintiffs pursuant to this Agreement; (v) reporting on the status of the administration of the Settlement to the Parties and providing the Parties necessary information; (vi) conferring with Class Counsel and Defendant's counsel to resolve any issues or disputes; (vii) preparing the Report and preparing a declaration regarding its due diligence in the claims administration process; (viii) providing Defendant with copies of all executed releases; (ix) setting up, administering, and making payments from the QSF; (x) advising Defendant of amounts needed to fund the QSF; (xi) distributing Settlement Payments to Named Plaintiffs, Opt-In Plaintiffs, and Claimants; (xii) withholding the Named Plaintiffs', Opt-in Plaintiffs', and Claimants' share of income, payroll, and other taxes, remitting such funds to the appropriate taxing authorities, and completing any associated tax reporting and filing requirements; (xiii) determining the employer's share of payroll taxes, communicating such amounts to Defendant, remitting and reporting the applicable portions of such payroll tax payments to the appropriate taxing authorities on a timely basis, and issuing the appropriate tax reporting documentation; and (xiv) performing such additional duties as the Parties may mutually direct.

*See id.* at § IV(6)(a).

---

[11] ILYM has provided a quote and has stated that administration expenses will not exceed $30,000.00.

Within twenty-eight (28) calendar days of the Court's Order granting this Motion, Web.com will provide the Settlement Administrator with the "Class Member List." Fourteen (14) calendar days after receipt of the Class Member List, the Administrator will be responsible for formatting, printing, and mailing the Notice Packet to each Class Member. The Administrator will also be responsible for receiving the completed Claim Forms, Opt-Out Requests, and Written Objections, and providing those to counsel.

Seven calendar days following this Court's issuance of an order granting final approval of the settlement and dismissing the case, the Administrator will be responsible for: (1) determining Web.com's share of payroll employment taxes on the Settlement Payments to be paid to Named Plaintiffs, Opt-in Plaintiffs, and Settlement Participants and shall provide a detailed description of such amounts to Web.com with a detailed explanation of the calculations. Within fourteen (14) calendar days of the effective date,[12] the Settlement Administrator shall (1) send to each Named Plaintiff, Opt-in Plaintiff, and Settlement Participant, by first class mail to his or her last-known address reflected in the Report, a check or checks representing the net Settlement Payment listed in the Report; (2) Service Award checks to Named Plaintiffs by Fed Ex or similar delivery method; and (3) employer-side payroll taxes to the appropriate authorities. The same day, the Settlement Administrator shall wire Court-approved attorneys' fees and costs to Plaintiffs' counsel to

---

[12] The term "Effective Date" means the first business day after the expiration of the time period to file any appeal or motion to alter or amend the Final Approval Order, or, if any appeal or such motion is filed, the first business day after all such appeals and all such challenges have been fully and finally exhausted and resolved in favor of Settlement approval. *See* Ex. A. § IV(3)(c).

65478175v.1

the location(s) that they direct. Plaintiffs' Counsel and Defendant's Counsel will work with the Administrator to take all necessary steps to ensure that the Notice of Settlement and settlement checks are sent to the correct addresses.

## V.
### ARGUMENT AND AUTHORITIES

### A.    The Class Action Settlement Procedure

Although Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, courts have generally followed a multi-step process. *See* FED. R. CIV. P. 23(3)(2); *Sample v. CenturyLink Communications, LLC*, No. cv-16-624-TUC-NVW, 2018 WL 3997484, at *8, (D. Ariz. Aug. 21, 2018). "Where a proposed class-action settlement would be binding on class members, 'the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.'" *See Sample,* 2018 WL3997484, at *8 (quoting FED. R. CIV. P. 23(e)(2)).

There are typically three stages applicable to the review of a proposed class action settlement. See MANUAL FOR COMPLEX LITIGATION (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. *See id.* Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also*

*Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266–67 (9th Cir. 2010). Federal courts generally find that preliminary approval of settlement and notice to the proposed class is appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011).

Although the court should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," the court should consider, among other factors, the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the extent of discovery completed; and the value of the settlement offer. *See Chem. Bank v. City of Sea*ttle, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

By this Motion, the Parties seek to accomplish the first step—that is, conditional certification for settlement purposes, approval of the plan to provide notice to the individual class members, and preliminary approval of the terms of the settlement. As part of this first step, the Parties will also request appointment of the class representative, appointment of class counsel, and a certain time and date for the fairness hearing so that it can be inserted into the notice to the class members.

1

2

3          **B.    Applicable Standards**

4          Courts recognize that there is "a strong judicial policy that favors settlements,

5   particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*,

6   516 F.3d 1095, 1101 (9th Cir.  2008). The parties, when represented by competent counsel

7   "are better positioned than courts to produce a settlement that fairly reflects each party's

8   expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

9   1995). However, the court must first determine that the settlement reached was truly fair,

10  and not tainted by conflicts of interest or biased negotiations. *See id.*  (recognizing that

11  courts "may not approve a proposed settlement if it is the product of fraud or overreaching

12  by, or collusion among, the negotiating parties"). "Beyond those disqualifications, the

13  'initial decision to approve or reject a settlement proposal is committed to the sound

14  discretion of the trial judge.'"  *Sample*, 2018 WL 3997484, at *9 (quoting *Class Plaintiffs

15  v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

16

17

18          When parties seek approval of a settlement agreement negotiated prior to formal

19  class certification, "there is an even greater potential for a breach of fiduciary duty owed

20  the class during settlement." *Gonzalez v. CoreCivic of Tenn.*, LLC, No.

21  116CV01891DADJLT, 2018 WL 4388425, at *2 (E.D. Cal. Sept. 13, 2018). Courts must

22  review such agreements with "'a more probing inquiry' for evidence of collusion or other

23  conflicts of interest than what is normally required under the Federal Rules." *Id.* (quoting

24  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) *overruled on other grounds

25  by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)); *see also Lane v. Facebook, Inc.*,

26  696 F.3d 811, 819 (9th Cir. 2012). In *Hanlon*, the Ninth Circuit set forth the following

27

28

eight factors to consider when addressing preliminary approval of a class action settlement

agreement,

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

150 F.3d at 1026 (numbering added).

## C.    The Proposed Settlement Merits Preliminary Approval

### 1.    There Is No Reason to Doubt the Fairness of the Settlement

Plaintiffs' Counsel—experienced wage and hour litigators accustomed to resolving

claims on both collective and class action bases across the United States—are convinced

that this settlement is fair and reasonable, both standing on its own and when viewed

against other wage and hour settlements. *See* Declaration of Austin Anderson, attached as

Exhibit C. The settlement negotiations were conducted fairly and at arm's-length with the

assistance of David Rotman, a nationally-renowned wage and hour mediator, and only after

the exchange and rigorous analysis of ample payroll data. *C.f., Mangone v. First USA Bank*,

206 F.R.D. 222, 226 (S.D. Ill. 2001) (recognizing that arm's-length negotiations conducted

by competent counsel constitute *prima facie* evidence of a fair settlement); *Bert v. AK Steel

Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The

participation of an independent mediator in settlement negotiations virtually insures that

the negotiations were conducted at arm's length and without collusion between the

parties."). Both Parties' counsel support the Agreement as fair and reasonable, and all certify that it was reached at arm's length.

### 2.    There Are No Deficiencies in the Settlement

The Parties have negotiated a reasonable settlement and a program to provide notice of the settlement to the class members that complies with Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure. The State Law Class Members will receive the settlement notice in a hard copy via regular mail. Included with the notice will be a one-page response form wherein they can elect to either return their claim form to participate in the settlement distribution, or to return their out-out request, to exclude themselves from the class.

The settlement provides ample time and reasonable procedures for class members to exclude themselves from the settlement or to object to the settlement if they choose to do so. Specifically, the deadline for the Class Members to return their claim forms, or requests to opt-out, is sixty (60) days from the date the Administrator mails the notice.

In short, this is an arms-length settlement achieved through mediation and by attorneys who are, on both sides, experienced in class action litigation. The settlement terms and the process for approval are designed to avoid "obvious deficiencies" and the Parties respectfully submit that there are no deficiencies in this settlement.

### 3.    The Settlement Does Not Improperly Grant Preferential Treatment to Plaintiffs or any Segment of the Class

The settlement does not improperly grant preferential treatment to the Plaintiffs or any segment of the class. Plaintiffs will be entitled to their *pro rata* share of the fund, as will all other class members.  There are no "segments" of the class to be concerned with,

nor any sub-classes receiving different damage formulas. Separate from their claims, Plaintiffs, through their counsel, will request a small enhancement award for their assistance in the prosecution of this case. These awards will come, if at all, only by motion to this Court after notice to the other class members is provided, as contemplated by the Agreement. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) ("Each class member was entitled to the same distribution, so the class representatives had no incentive to favor one subclass over another.")

4.    **The *Hanlon* Factors Favor Preliminary Approval**[13]

**(1) The strength of the plaintiffs' case:** Plaintiffs have asserted that they were required to perform indispensable services on Web.com's behalf for which they were not paid. The dispute is inherently factual in nature and the amount of time, if any, that Plaintiffs and Class Members worked off of the clock is hotly contested. Defendant contends that to the extent that any time worked off the clock for the initial start-up activities was, at most, *de minimus*, and not subject to recovery under federal or state law. Ultimately, it would be a close question for the fact finder.

**(2) The risk, expense, complexity, and likely duration of further litigation**: This settlement is the result of almost a year of litigation. The length of time necessary to reach a final result would have occupied many more years of judicial resources and vast amounts of attorney time. The pleadings and briefs already filed in this Court demonstrate that this case has been, and would have continued to be, difficult and expensive to resolve. As a hybrid collective/class action, the Parties would have to litigate the issues of conditional certification of a § 216(b) collective action and subsequent motion for decertification. Additionally, the Parties would necessarily brief the issue of class certification under Rule 23 of the Federal Rules of Civil Procedure. In addition to certification questions, the Parties would be required to engage in further, extensive, fact discovery, and would likewise

---

[13] The seventh and eight factors, addressing the presence of the government as a party and the reaction of the class members, respectively, are not applicable here. The government is not a party to this lawsuit, and as these factors are addressed pre-notice, there is no reaction from the class members.

brief dispositive motions on Plaintiffs' claims and Web.com's affirmative defenses. Settlement of this action is in the best interests of judicial economy and the Settlement Class Members.

**(3) The risk of maintaining class action status throughout the trial:** While the Parties agree that class certification is appropriate for settlement purposes, Plaintiffs recognize that continuing through trial on the merits in a representative manner is a difficult undertaking and creates complex legal hurdles, including ensuring that the representative evidence is sufficient to maintain a judgment against each facility and in each state.

**(4) The amount offered in settlement:** The settlement agreement provides for a substantial recovery for the Plaintiffs and Settlement Class Members. The gross settlement fund is $500,000.00 and Plaintiffs and the Settlement Class Members are estimated by Class Counsel to be eligible to receive an average settlement amount of $94.00, depending on the number of weeks worked during the relevant window of recovery, and even assuming that ***all possible Class Members join the Settlement Class*** by opting into the FLSA Collective Action. This amount is within the reasonable range of recovery and compensates Plaintiffs and the Settlement Class Members for approximately fifteen (15) to twenty (20) minutes of unpaid start-up time for each week worked within the relevant time period, including liquidated damages.[14] The settlement amount is fair and reasonable, considering the significant risks faced by continued litigation.

**(5) The extent of discovery completed and the stage of the proceedings**: This case has been on file since January 2019. During that time, the Parties participated in this Courts Mandatory Initial Discovery Pilot ("MIDP") and produced, both informally and formally, the relevant and necessary documents to allow counsel for the Parties to ascertain the potential range of recovery and negotiate in good faith. Moreover, resolution was reached after mediating with wage and hour mediator, David Rotman, and fully exploring the strengths (and weaknesses) of the Parties' claims, and defenses.

---

[14] In Plaintiffs' Second Amended Collective/Class Action Complaint, Plaintiffs alleged that they would work, at most, twenty-five (25) minutes a day off of the clock. *See* ECF No. 36. Through the course of the litigation Plaintiffs and the Settlement Class Members alleged they performed, on average, approximately forty (40) to fifty (50) minutes of start-up activities a week before clocking in. Web.com at all times contended that there was no work performed while off the clock and that the Plaintiffs and the Settlement Class Members were paid for all of their time worked. Accordingly, the negotiated Settlement Amount is well within the available range of recovery.

65478175v.1

**(6) The experience and views of counsel**: Both Parties are represented by experienced wage and hour attorneys who regularly litigate class and collective actions. Counsel for both Parties represent to this Court that the settlement reached herein constitutes a good result, considering the facts at issue and the significant time and expense that will be incurred if a settlement is not reached. Class Counsel further fully endorse the settlement as being fair and reasonable for the class. The settlement provides meaningful relief to the class and is due to be approved.

Weighing the risks against the benefits of a settlement, the Agreement is fair and reasonable.

5.      **The Court Should Appoint Plaintiffs' Counsel as Class Counsel**

A court certifying a class generally must appoint class counsel. *See* FED. R. CIV. P. 23(g)(1)(A). The Rule lists several factors for the courts' consideration: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *See id.* In addition, the court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B).

Here, Plaintiffs request that Anderson Alexander, PLLC be appointed as Class Counsel.  As previously explained, this firm has diligently litigated this action from filing to mediation and, after substantial investigation and analysis, negotiated a fair settlement with the assistance of a third-party mediator. Moreover, as explained in Austin Anderson's declaration, Anderson Alexander, PLLC has substantial credentials in class and collective action litigation in the wage and hour context. *See* ECF 39-3 .

**D.    THE COURT SHOULD APPROVE THE PARTIES' PROPOSED NOTICE AND DISSEMINATION PLAN**

The content of the proposed Notice(s) of Class and Collective Action Settlement, which is attached hereto as Exhibit B, fully complies with due process and Rule 23. *See* FED. R. CIV. P. 23(c)(2)(B). Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

*Id.* The Notices proposed here satisfy each of these requirements. There are three specific notices that will issue to the class members: (1) the first (Exhibit E-1 to the Amended Settlement Agreement) will issue to those individuals who are eligible to participate in one or more of the class actions and the collective action; (2) the second (Exhibit E-2 to the Amended Settlement Agreement) will issue to those individuals only eligible to participate in the FLSA Collective Action; and (3) the third (Exhibit F to the Amended Settlement Agreement) will issue to those individuals who have opted-in to this litigation.[15]

The notices describe the difference between the class and collective claims involved in this litigation, provide instruction for participating (or opting out of) the respective settlements, describing the applicable settlement awards and further describing how they

---

[15] The three notices are attached, together, as Exhibit B to this Motion.

are calculated, and describe the scope of the applicable releases for each settlement. Moreover, the notices describe the terms of the settlement, inform the class about the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing. They also advise them that they have the right to retain their own counsel at the fairness hearing. Accordingly, the detailed information in the proposed Notices is more than adequate to put Class Members on notice of the proposed settlement and is within the requirements of Federal Rule of Civil Procedure 23(c)(2)(B). In short, to satisfy due process, the notice must "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

According to the Parties' Notice Plan, within forty-two (42) days after entry of a Preliminary Approval Order, the Administrator shall mail the appropriate notice to each class member. The class members shall have sixty (60) days to return the claim and/or opt-out request forms to the settlement administrator. The proposed notice plan is summarized below:

    1)    **Within twenty-eight (28) calendar days of the Court's Preliminary Approval Order**:

Defendant will provide the relevant class contact information to the Administrator in a format acceptable to the Administrator.

    2)    **Within fourteen (14) calendar days of receiving the information from the Parties**:

65478175v.1

The Administrator will mail, via First Class United States mail, the Court-approved notice packet to each Plaintiff and Class Member. The notice period will close sixty (60) days from the date of the mailing.

### 3)   At least fourteen (14) calendar days prior to the Fairness Hearing:

Plaintiffs shall move the Court for entry of the Order Granting Final Approval along with the associated entry of Judgment by filing a Motion for Judgment and Final Approval, in addition to Plaintiffs' Request for Attorneys' Fees and Costs. The date of the Fairness Hearing will be set by the Court.

### 4)   Within fourteen (14) business days the Effective Date

The Administrator shall mail to each participating claimant, at his or her last known address, his or her individual settlement payment.

### E.   Approval of FLSA Settlement Is Appropriate

Because Plaintiffs' FLSA claims are distinct from the State Class Members' state law claims, Plaintiffs seek approval of the settlement of the FLSA claims separately. "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Court approval is required for settlement of private FLSA claims. *See Jones v. Agilysis, Inc.*, No. C 12-03516 SBA, 2014 WL 108420, *2 (N.D. Cal. Jan. 10, 2014) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "In reviewing an FLSA settlement, the district court's obligation is not to act as caretaker but as gatekeeper; rather, it must ensure that private FLSA settlements are appropriate given

the FLSA's purposes and that such settlements do not undermine the Act's purposes." *Id.* (internal quotation marks and modifications omitted).

To be approved, a FLSA settlement agreement must constitute "a fair and reasonable resolution of a *bona fide* dispute." *Quintana v. HealthPlanOne LLC*, No. CV-18-02169-PHX-RM, 2019 WL 3342339, at *1–2 (D. Ariz. July 25, 2019); *Quiroz v. City of Ceres*, No. 1:17-CV-00444-DAD-BAM, 2019 WL 1005071, at *2 (E.D. Cal. Mar. 1, 2019) (citing *Dunn v. Teacher's Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016)); *see also Lynn's*, 679 F.2d at 1352–53. To find a *bona fide* dispute, "[t]here must be 'some doubt . . . that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims.'" *Quintana,* 2019 WL 1005071, at *1 (quoting *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016)). "If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute." *Id.*

Upon finding a *bona fide* dispute, some courts look to Federal Rule of Civil Procedure 23 to consider the fairness of the collective action settlement. *See* I*n re Bank of America Wage & Hour Emp. Litig.*, No. 10–MD–2138–JWL, 2013 WL 6670602, at *2 (D. Kan. Dec. 18, 2013)); *see also Selk*, 159 F. Supp. 3d at 1172–73.

> "The Supreme Court, however, has instructed that 'Rule 23 actions are fundamentally different from collective actions under the FLSA,' *Genesis*, 569 U.S. at 74, and the Ninth Circuit has discussed at length the differences between FLSA collective actions and class actions under Rule 23, *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018) ("Collective actions and class actions are creatures of distinct texts—collective actions of

section 216(b), and class actions of Rule 23—that impose distinct requirements.")."

*Quintana,* 2019 WL 1005071, at *1–2. Accordingly, "some district courts employ a 'totality of circumstances approach that emphasizes the context of the case and the unique importance of the substantive labor rights involved.'"[16] *See id.* (quoting *Selk*, 159 F. Supp. 3d at 1173); *see e.g. Kerzich v. Cty. of Tuolumne*, No. 1:16-cv-01116-DAD-SAB, 2019 WL 1755496, at *4 (E.D. Cal. Apr. 19, 2019) (adopting the *Selk* totality of the circumstances approach); *Banks v. Pyramid Consulting, Inc.*, No. 3:18-CV-00078-H-JLB, 2019 WL 338493, at *2–3 (S.D. Cal. Jan. 28, 2019) (same).

A district court employing a totality of the circumstances approach considers the following factors to determine whether the settlement is a reasonable compromise of the dispute: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See Selk*, 159 F. Supp. 3d 1173. After consideration of the factors, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1173–74 (quoting *McKeen-Chaplin v. Franklin*

---

[16] The Parties will address the totality of the circumstances approach herein, and note that full briefing of the issue of Class Certification will be completed in conjunction with the Parties' Motion for Final Approval.

65478175v.1

*Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, *2 (N.D. Cal. Dec. 19, 2012)) (internal quotation marks omitted).

Considering the totality of the circumstances, as briefed more fully above, approval of the Settlement Agreement attached as Exhibit A to this motion is appropriate.  As discussed at length above, the Parties have established the existence of a *bona fide* dispute—Plaintiffs alleged that Web.com violated the FLSA because it failed to pay them the proper amount of overtime compensation due pursuant to the FLSA. While Plaintiffs are confident they would have prevailed on the merits of the liability claim, success was not a certainty and a legitimate dispute existed on the amount of damages. Web.com at all times denied liability, asserted multiple defenses to Plaintiffs' claims, and challenged the alleged "off-the-clock" hours worked. There was a *bona fide* dispute between the Parties that is fully resolved by the proposed Agreement. Moreover, approval of the Agreement will promote the policy of encouraging settlement of litigation. *See Selk*, 159 F. Supp. 3d at 1175.

The settlement provides for meaningful compensation that is well within the possible range of recovery, the Parties undertook significant formal and informal discovery to meaningfully determine the applicable settlement values, the scope of the release is not overly broad and is instead limited to the FLSA Collective member's wage and hour claims for compensation, and there has been no fraud or collusion between the Parties.

65478175v.1

# VI.
## CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court enter the Proposed Order submitted herewith and:

1) certify the proposed Settlement Class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in connection with the settlement process;

(2) for settlement purposes, appoint Austin Anderson and Clif Alexander of Anderson Alexander, PLLC as Class Counsel for the Proposed Settlement Class;

(3) appoint Casey Howard, Phil Martinez, Lori Astwood, and Ben Azar as Class Representatives for the Proposed Settlement Class;

(4) approve the Parties' proposed notice(s) of settlement, attached as Exhibit B and proposed notice procedure;

(5) set a date by which the Parties must file a motion for final settlement approval and petition for an award of attorneys' fees and costs;

(6) schedule the Fairness Hearing; and

(7) approve the settlement agreement pursuant to 29 U.S.C. § 216(b) and authorize the issuance of a settlement notice(s) to the putative members of the collective, attached as Exhibit B to this Motion.

65478175v.1

1    DATED this 28th day of August, 2020.

2                                                    LUBIN & ENOCH, P.C.
3                                                    ANDERSON ALEXANDER, PLLC

4                                                    By:    */s/ Clif Alexander*
5                                                           Clif Alexander

6                                                    Attorneys for Plaintiffs and the Putative Class
7                                                    Members

8
9                                                    SEYFARTH SHAW, LLP

10                                                   By:    */s/ Gerald L. Maatman, Jr.*
11                                                          Gerald L. Maatman, Jr.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

65478175v.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF AUTHORITY**

Plaintiffs' Counsel certifies that Defendant's Counsel has authorized the filing of this joint motion, and approved the inclusion of their signature herein.

/s/ *Clif Alexander*
Clif Alexander

**CERTIFICATE OF SERVICE**

I hereby certify that on the August 28, 2020, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing.

/s/ *Frances Lopez*
Frances Lopez

65478175v.1