1
2
3
4
5
6
7

**LUBIN & ENOCH, P.C.**
Nicholas J. Enoch
Arizona Bar No. 016473
Stanley Lubin
Arizona Bar No. 003076
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email: nick@lubinandenoch.com

8
9
10
11
12
13

**ANDERSON ALEXANDER, PLLC**
Austin W. Anderson (*Admitted Pro Hac Vice*)
Email: austin@a2xlaw.com
Clif Alexander (*Admitted Pro Hac Vice*)
Email: clif@a2xlaw.com
819 North Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Fax: (361) 452-1284

14
15

Attorneys for Plaintiffs

16
17
18
19
20
21
22

Gerald L. Maatman, Jr. (*pro hac vice*)
Matthew J. Gagnon (*pro hac vice*)
Seyfarth Shaw LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
Email: gmaatman@seyfarth.com
Email: mgagnon@seyfarth.com

23

Attorneys for Defendant Web.Com Group, Inc.

24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Casey Howard, Phil Martinez, Lori Astwood, and Ben Azar, Individually and on behalf of all others similarly situated, | No.2:19-cv-00513 |
| Plaintiffs, | JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FLSA COLLECTIVE ACTION |
| v. | |
| Web.com Group, Inc., A Florida Corporation, | |
| Defendant. | |

**TO THE HONORABLE DIANE J. HUMETEWA:**

Plaintiffs Casey Howard, Phil Martinez, Lori Astwood, and Ben Azar, individually and on behalf of all others similarly situated, and Defendant Web.com Group, Inc. ("Web.com") (collectively, the "Parties"), file this Joint Motion for Final Approval of Class Action Settlement and FLSA Collective Action. The Parties respectfully move this Court to certify the proposed Rule 23 Classes identified herein for the purpose of settlement, determine that the Amended Class and Collective Action Settlement Agreement and Stipulation ("Agreement") between the Parties is fair and reasonable, and approve the Agreement between the Parties.

65478175v.1
67542708v.3
67605737v.1

# I.
## INTRODUCTION

On November 8, 2019, the Parties filed their motion for preliminary approval asking this Court to certify, for settlement purposes only, a settlement class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), approve the form of the notice to be sent to the Class Members, and approve the timing and method of the notice dissemination. On July 8, 2020, this Court granted, in part, the motion for preliminary approval (ECF No. 44), and on September 20, 2020, this Court granted the Parties' amended motion for preliminary approval (ECF No. 48). Specifically, this Court made the following findings:

1.      Finding the class and collective action settlement agreement fell within the range of possible approval;

2.      Conditionally certifying, for settlement purposes only, the following settlement subclasses ("State Law Classes):

(1)     the **"Arizona Class Action"** includes all hourly call-center employees who were employed by Web.com in the State of Arizona, at any time from January 30, 2018, through the final disposition of this matter;

(2)     the **"Pennsylvania Class Action"** includes all hourly call-center employees who were employed by Web.com in the State of Pennsylvania, at any time from February 28, 2016, through the final disposition of this matter; and

(3)     the **"Washington Class Action"** includes all call-center workers employed by Web.com in Spokane, Washington, at any time from May 23, 2016, though the final disposition of this matter, except for Carl V. Jehle; all persons employed by Defendant as a Call Center Employee at any time from December 14, 2014 through the date this Order is granted and who have not otherwise released or extinguished their claims.

65478175v.1
67542708v.3
67605737v.1

3.    Conditionally certifying, for settlement purposes only, the following FLSA Collective:

> [T]he Named Plaintiffs and all hourly call-center employees[1] who were employed by Web.com Group, Inc. and/or its affiliates or subsidiaries ("Web.com") in the United States at any time from January 30, 2016 through the final disposition of this matter, including the Opt-in Plaintiffs, but excluding Carl V. Jehle.

4.    Finding that, for settlement purposes only, the requirements of 29 U.S.C. § 216, Federal Rule of Civil Procedure 23(a), and Federal Rule of Civil Procedure 23(b)(3) are satisfied, with the exception of the manageability requirement of Rule 23(b)(3).

4.    Appointing, for settlement purposes only, Casey Howard, Phil Martinez, Lori Astwood, and Ben Azar as Class Representatives for the Classes and Proposed FLSA Collective.

5.    Appointing, for settlement purposes only, Anderson Alexander, PLLC as counsel for the Classes and the Proposed FLSA Collective Action.

6.    Appointing ILYM Group, Inc. ("ILYM") as Settlement Administrator.

7.    Approving, as to form and content, the Opt-In Plaintiff Notice, the Class and Collective Action Settlement Notice ("Class Notices") and the FLSA Settlement Claim Form ("Claim Form"), as amended to include the Court's telephonic dialing instructions, and ordering the Settlement Administrator to mail those documents to the members of the

---

[1] *See* ECF No. 47-1 at Exhibit B for a list of job titles used for identification of "Call Center Employees."

65478175v.1
67542708v.3
67605737v.1

Classes as provided in the Agreement and approving the schedule proposed by the Parties in their preliminary approval motions.

The Court scheduled the Final Approval Hearing to take place on January 26, 2021, at 10:00 a.m. in Courtroom 605, Sandra Day O'Connor United States Courthouse, 401 W. Washington Street, Phoenix, Arizona 85003 to confirm the overall fairness of the settlement and to fix the amount of reasonable attorneys' fees and costs to Class Counsel and enhancement payments to the Class Representatives.

The Parties now request that the Court issue an Order finally certifying the requested settlement classes and collective and approving the Settlement for the settlement classes and collective.

## II.
### SUMMARY OF FACTS AND PROCEDURAL HISTORY

This hybrid wage and hour collective/class action lawsuit was originally filed in the District of Arizona by Casey Howard and Phil Martinez ("Plaintiffs"), individually and on behalf of all other call-center employees who were employed by Web.com at any time from January 30, 2016 through the present. Plaintiffs contend that Web.com did not pay for "start-up" time before their respective shifts started. *See* ECF No. 1. Plaintiffs subsequently amended their complaint, adding Arizona, Pennsylvania, and Washington state law claims as proposed class actions pursuant to Federal Rule of Civil Procedure 23(b)(3). *See* ECF Nos. 12 and 36.

Web.com denies any liability to Plaintiffs and any putative class and/or collective action members for any unpaid back wages or overtime and asserts that its hourly, non-

65478175v.1
67542708v.3
67605737v.1

exempt call-center employees were fully and properly compensated under federal and state law.

Since the filing of this lawsuit, seventy-eight current and former non-exempt hourly call-center employees who worked for Web.com in Arizona, Pennsylvania, Washington and Florida have filed their pre-notice consent to join. After exchanging Initial Disclosures pursuant to Federal Rule of Civil Procedure 26, the Parties agreed to mediate this matter in good faith.  To facilitate a successful mediation, the Parties further agreed to seek a stay of the pending action—a stay this Court granted on May 21, 2019. *See* ECF Nos. 29 and 30, respectively.

On July 22, 2019, the Parties mediated with well-respected wage and hour mediator, David A. Rotman, in San Francisco, California. On August 2, 2019, the Parties filed their Notice of Settlement with this Court. *See* ECF No. 32. On November 8, 2019, the Parties filed their Joint Preliminary Motion for Approval of Class Action Settlement and FLSA Collective Action ("Preliminary Approval Motion"). *See* ECF No. 39. On July 8, 2020, this Court entered an order granting in part, and denying in part, the Preliminary Approval Motion.[2] *See* ECF No. 44. The Parties were further ordered to revise the Settlement Agreement to comply with the Court's revisions addressed in the order and to file an Amended Preliminary Approval Motion incorporating the Court's required modifications.

---

[2] By this Court's July 8, 2020 order, the Court preliminarily certified the requested three State Law Classes and the FLSA Collective Action and informed the Parties that further briefing on the issues of class and collective certification need not be addressed. *See* ECF No. 44, pgs. 11 and 13.

65478175v.1
67542708v.3
67605737v.1

The Parties complied with this Court's order and revised the Settlement Agreement and Exhibits and filed an amended motion for preliminary approval. *See* ECF No. 47. This Court entered a subsequent order granting the Parties' Amended Joint Motion for Preliminary Approval of Class Action Settlement and FLSA Collective Action and the Parties now seek final approval of their Agreement.

## III.
### SUMMARY OF THE SETTLEMENT TERMS

The total Gross Settlement Fund is $500,000.00. Included in that amount is Class Counsel's attorneys' fees and out-of-pocket expenses, settlement administration costs, and $10,000.00 (total) in service awards for the Named Plaintiffs. The amount of the Gross Settlement Fund remaining after deductions is the Net Settlement Fund.  The Net Settlement Fund is divided into the FLSA Settlement Fund and the State Law Settlement Fund.  Seventy-five percent (75%) of the Net Settlement Fund is allocated to the FLSA Settlement Fund and twenty-five percent (25%) of the Net Settlement Fund is allocated to the State Law Settlement Fund. Each Settlement Participant shall receive their *pro rata* share of the respective Settlement Funds they are eligible to (and elect to) participate in,[3] based on their Workweeks—a number unique to each class member calculated based on the number of weeks he or she worked during the Relevant Period.

---

[3] To recover from the FLSA Settlement Fund, a putative member of the FLSA collective must submit a valid and timely Claim Form (unless previously listed as an opt-in plaintiff, in which case they will be deemed to have opted-in to the FLSA Settlement). To recover from the State Law Settlement Fund, a State Law Class member must not elect to opt out of the Settlement. The class members may choose to participate in one, or both, of the settlement funds, based on their eligibility.

65478175v.1
67542708v.3
67605737v.1

After calculating the total Net Settlement Fund (the amount remaining in the Gross Settlement Fund after deducting attorneys' fees, costs, service awards, administration costs, and employer-side payroll and other applicable taxes) and dividing the remaining amount into the FLSA Settlement Fund and State Law Settlement Fund as described above, each Named Plaintiff, Opt-In Plaintiff, FLSA Settlement Class Member, and State Law Class Member ("Settlement Participants") shall receive their *pro rata* share of the respective Settlement Funds according to the following process.[4]

(1)    75% of the Net Settlement Fund shall be allocated to FLSA Settlement Fund and 25% of the Net Settlement Fund shall be allocated to State Law Settlement Fund;

(2)    Defendant will supply to the Settlement Administrator the number of "Workweeks" worked by each Settlement Participant. "Workweeks" are defined as the total number of days worked divided by 7;

(3)    FLSA Settlement Payment Per Workweek = 75% of Net Settlement Fund/Total Workweeks worked by FLSA Settlement Members, including Named Plaintiffs;

(4)    State Law Settlement Payment Per Workweek = 25% of Net Settlement Fund/Total Workweeks worked by State Law Class Members.

*See id.* at § IV (10).

---

[4] After deductions are made from the Gross Settlement Fund pursuant to the Agreement, the Net Settlement Fund totals $305,276.88  The Net Settlement Fund is divided such that 75% of the Net Settlement Fund, or $228,957.66, is allocated to the FLSA Settlement Fund and 25%, or $76,319.22, is allocated to the State Law Settlement Fund. After the close of the notice period and when the identity of the Settlement Participants is fixed, ILYM will calculate the individual settlement payments based on the calculations contained herein.

65478175v.1
67542708v.3
67605737v.1

Moreover, the Agreement sets forth that fifty percent (50%) of all payments constitute wages and will accordingly be subject to W-2 reporting. Withholdings and normal payroll taxes will be deducted pursuant to state and federal law from this amount.[5] The Parties further agree that the remaining fifty percent (50%) constitutes payment for liquidated damages, prejudgment interest, and penalties, and will be reported on an IRS Form 1099. *See id.*

## IV.
### CLASS RESPONSE TO NOTICE OF SETTLEMENT

This Court approved ILYM to serve as the third-party administrator for the settlement class. The 60-day notice period began on November 13, 2020, when ILYM mailed 4,528 individuals their respective Class Notice.[6] A breakdown of the responses from the Class Members is as follows:

| | Numbers | Percent of Total Class |
|---|---|---|
| **Total Class Members** | 4,528 | 100% |
| **Notice Successfully Mailed** | 4,238 | 93.6% |
| **FLSA Settlement Claim Forms Returned** | 738[7] | 16.3% |

[5] The employer portion of all such payroll taxes and withholdings shall also come out of the Gross Settlement Fund.

[6] After the initial mailing, ILYM re-mailed the notice forms that were otherwise returned as undeliverable. In total, 804 notice packets were returned as undeliverable and 515 were subsequently re-mailed. No notices have been returned after the subsequent remailing. There were a total of 290 undeliverable notices for which ILYM was not able to successfully trace the recipient's address. *See* Exhibit A, ¶ 8.

[7] The Notice Period expired on January 12, 2021. Additional Opt-In Claim Forms that are timely postmarked by January 12, 2021 will continue to be delivered and be added

65478175v.1
67542708v.3
67605737v.1

| | | |
|---|---|---|
| **Opt-Outs Received** | 0 | 0% |
| **Objections Received** | 0 | 0% |

*See* Declaration of Madely Nava, Case Manager for ILYM., attached as **Exhibit A**. As indicated above, to date, no objections have been filed and no class members have chosen to opt-out of the Settlement. *See id.* The Class Notice advised Class Members that they could submit an exclusion and/or objection to this Court and included the January 12, 2021 post-mark deadline. *See id.* Additionally, ILYM has processed 738 Claim Forms to date and has determined all claims to be valid. *See id.* There is currently 100% participation in the State Law Class Settlement, and 16.3% participation in the FLSA Settlement. *See id.*

Federal Rule of Civil Procedure 23(e)(1) requires a court to "direct notice [of a proposed settlement] in a reasonable manner to all [settlement] class members who would be bound by the proposal." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945–46 (9th Cir. 2015). "Rule 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Id.* at 946 (internal quotations omitted). This Court previously determined that the Settlement Notices issued to the respective Class Members provided sufficient notice as required by Rule 23(e). *See* ECF No. 48. The settlement notices in this case informed the State Law Class Members and FLSA Collective Members of the hybrid nature

---

to this number. The Parties will provide a supplemental advisory containing those updated numbers at least twenty-four (24) hours before the Final Approval Hearing.

65478175v.1
67542708v.3
67605737v.1

of the litigation, specified the aggregate amount of the Settlement, and described the plan and provided the calculations for allocation to the Classes.

The settlement notices also informed the State Law Class Members and the FLSA Class Members that Class Counsel would be paid attorneys' fees and expenses out of the Settlement Fund, subject to court approval, in connection with the Agreement, of the State Law Class Members' opportunity to object and opt out of the State Law Settlement Classes, instructions for objecting or opting-out of the State Law Settlement Classes, instructions for opting-in to the FLSA Settlement Collective, the scope of the applicable releases, the identity and contact information of Class Counsel, and of the date of the fairness hearing and call-in instructions for participation. *See* ECF No. 47-1.

As such, the State Law Class Members and FLSA Collective Members have a full opportunity to participate in the fairness hearing, including the opportunity for objectors to appear at the hearing, individually or through an attorney of their choosing, and to be heard on their objections. *See id.* As discussed in more detail above, as of the time of this filing, no State Law Class Members have filed objections to the Settlement or elected to opt-out of the Settlement. *See* Exhibit A. Accordingly, the Parties have established that adequate notice pursuant to Federal Rule of Civil Procedure 23(e) has been provided. *See* FED. R. CIV. P. 23(e); *Cole*, 2018 WL 2766028, at *3.

**V.**
**LEGAL ANALYSIS SUPPORTING FINAL APPROVAL**

Although Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, courts have generally followed a multi-step process. *See* FED.

65478175v.1
67542708v.3
67605737v.1

R. CIV. P. 23(3)(2); *Sample v. CenturyLink Communications, LLC*, No. cv-16-624-TUC-NVW, 2018 WL 3997484, at *8, (D. Ariz. Aug. 21, 2018). After preliminary approval and the issuance of a Court-approved settlement notice, courts can approve a proposed class action settlement after a "fairness hearing" and upon finding that the settlement is fair, reasonable, and adequate. *See Sample,* 2018 WL3997484, at *8; FED. R. CIV. PROC. 23(e)(2).

Courts recognize that there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). The parties, when represented by competent counsel "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). However, the court must first determine that the settlement reached was truly fair, and not tainted by conflicts of interest or biased negotiations. *See id.* (recognizing that courts "may not approve a proposed settlement if it is the product of fraud or overreaching by, or collusion among, the negotiating parties").

Under Rule 23(e), district courts must evaluate a proposed settlement for fundamental fairness, adequacy, and reasonableness before approving it.[8] FED. R. CIV. P.

---

[8] This review will likewise satisfy the Court's responsibility to approve the Agreement pursuant to 29 U.S.C. § 216(b). "When parties seek approval of a FLSA settlement, a district court may approve the settlement if it reflects a 'reasonable compromise over issues.'" *Lockwood v. R&M Towing LLC*, No. CV-19-04812-PHX-SPL, 2020 WL 5724383, at *2 (D. Ariz. Sept. 24, 2020) (quoting *Lopez v. Arizona Public Service Co.*, No. CV 08-1843-PHX-JAT, 2010 WL 1403873, at *1 (D. Ariz. Jan. 27, 2010). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages . . . the court may approve the settlement in order to promote

65478175v.1
67542708v.3
67605737v.1

23(e)(2). Ultimately, a determination of the fairness, adequacy, and reasonableness of a class action settlement involves consideration of:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.[9]

*Rodriguez v. QS Next Chapter LLC*, No. CV-20-00897-PHX-DJH, 2020 WL 6882844, at *5 (D. Ariz. Nov. 18, 2020) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal quotation and citation omitted)). When "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . . factors alone" is insufficient. *See id.* (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). Under that circumstance, district courts must address not only the factors above, but must also determine that the settlement did not result from collusion

---

the policy of encouraging settlement of litigation." *Id.* (quoting *Khanna v. Inter–Con Sec. Systems, Inc.*, No. CIV S-09-2214 KJM GGH, 2012 WL 4465558, at *10 (E.D. Cal. Sept. 25, 2012) (citation and internal quotation marks omitted)). Courts therefore approve a fair and reasonable settlement if it was reached as an arm's length resolution of contested litigation to resolve a bona fide dispute under the FLSA. *Id.*

[9] "The Court must consider the relevant factors but need not 'reach any ultimate conclusions on the contested issues of law and fact which underlie the merits of the dispute, for it is the very uncertainty of the outcome of litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Wood v. Ionatron, Inc.*, No. CV 06-354-TUC-CKJ, 2009 WL 10673479, at *3 (D. Ariz. Sept. 28, 2009) (citing *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982); *Hanlon*, 150 F.3d at 1026).

among the parties. *See id.* Accordingly, a higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair is required. *See Hanlon*, 150 F.3d at 1026.

By this Motion, the Parties seek to accomplish the final step—that is, certification of the classes for settlement purposes and final approval of the terms of the settlement.

A.    **The *Hanlon* Factors Favor Final Approval[10]**

(1) **The strength of the plaintiffs' case**

Plaintiffs have asserted that they were required to perform integral and indispensable services on Web.com's behalf for which they were not paid. The dispute is inherently factual in nature and the amount of time, if any, that Plaintiffs and Class Members worked off-the-clock and without pay is hotly contested. Defendant denies that any off-the-clock work occurred and further contends that to the extent there had been any time worked off-the-clock for the initial start-up activities, it was, at most, *de minimis*, and not subject to recovery under federal or state law. While Plaintiffs maintain that their claims have merit, they recognize the possibility that a reasonable jury may disagree, or alternatively, recognize that a finding that their alleged uncompensated time was *de minimis* would destroy their possibility for a monetary recovery. *C.f., Peterson v. Nelnet Diversified Sols., LLC*, 400 F. Supp. 3d 1122, 1141 (D. Colo. 2019) (finding the call center

---

[10] The seventh factor, addressing the presence of the government as a party is not applicable here.

65478175v.1
67542708v.3
67605737v.1

employees' start-up time to be *de minimis* based on disparate facts). Ultimately, it would be a close question for the fact finder.

> **(2)  The risk, expense, complexity, and likely duration of further litigation**

The Agreement before this Court constitutes the culmination of two (2) years of litigation before this Court. *See* ECF No. 1. The length of time necessary to reach a final result would have occupied many more years of judicial resources and vast amounts of attorney time. The pleadings and briefs already filed with this Court demonstrate that this case has been, and would have continued to be, difficult and expensive to resolve. As a hybrid collective/class action, the Parties would have to litigate the issues of conditional certification of a § 216(b) collective action and subsequent motion for decertification. The Parties would also necessarily conduct discovery on issues relevant to certification of multiple class actions under Rule 23 of the Federal Rules of Civil Procedure and prepare and file extensive briefing on the issue.

In addition to certification questions, the Parties would be required to engage in further, extensive, fact discovery consisting of written discovery and depositions, and would likewise brief dispositive motions on Plaintiffs' claims and Web.com's affirmative defenses. Settlement of this action is in the best interests of judicial economy and the Settlement Participants.

> **(3) The risk of maintaining class action status throughout the trial**

While the Parties agree that class certification is appropriate for settlement purposes, Plaintiffs recognize that continuing through trial on the merits in a representative manner

65478175v.1
67542708v.3
67605737v.1

is a difficult undertaking and creates complex legal hurdles, including ensuring that the representative evidence is sufficient to maintain a judgment against each facility, for each job title, and in each state. *See* ECF No. 47-1 (list of the 219 job titles subject to the Agreement, attached as Exhibit B to the Agreement). Additionally, the "compromise of complex litigation is encouraged by the courts and favored by public policy." *Wood*, 2009 WL 10673479, at *4 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96 (2nd Cir. 2005)).

### (4) <u>The amount offered in settlement</u>

The Agreement provides for a substantial recovery for the Plaintiffs and Settlement Participants. The Gross Settlement Fund is $500,000.00 and the projected Net Settlement Fund totals $305,276.88 after accounting for the requested deductions. *See* Ex. A, ¶ 15. The final settlement calculations cannot be completed until after the close of the notice period (and accounting for delayed, but timely post-marked, Claim Forms) as the calculations will be based on the number of Workweeks worked by the Participating Settlement Members during the relevant time periods.  Specifically, the State Law Class Action Settlement Members who did not opt out of the Settlement, and the FLSA Collective Members who timely submit their Claim Forms.[11]

"To determine if the amount offered in settlement is fair, '[i]t is the complete package taken as a whole, rather than the individual component parts, that must be

---

[11] There is substantial overlap between the classes, and it is possible to participate in one, both, or none of the settlement classes identified herein.

examined for overall fairness.'" *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *2 (D. Ariz. Apr. 20, 2012) (quoting *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 628 (9th Cir.1982)). The FLSA Settlement Members, based on the current opt-in rate at the time of filing, will receive an average of $142.92 for their FLSA claims, with an estimated highest gross payment of $1,032.15.[12] *See* Ex. A, ¶ 16. The State Law Settlement Class Members, based on the *opt-out* rate at the time of filing, will receive an average of $47.64 for their State Law Claims, with an estimated highest gross payment of $271.88.[13] *Id.* Although FLSA Settlement Members are projected to receive larger settlement awards, each Class Member had the opportunity to recover under the FLSA Settlement Fund by timely returning their Claim Form. Accordingly, taken as a whole, these amounts are within the reasonable range of recovery and provides substantial compensation for Plaintiffs and the Settlement Participants.

**(5) <u>The extent of discovery completed and the stage of the proceedings</u>**

This case has been on file since January 2019. During that time, the Parties participated in this Court's Mandatory Initial Discovery Pilot ("MIDP") and produced, both informally and formally, the relevant and necessary documents to allow counsel for the Parties to ascertain the potential range of recovery and negotiate in good faith. Moreover, resolution was reached after mediating with well-respected wage and hour

---

[12] This number will decrease as additional Claim Forms are returned. Every individual had the opportunity to participate in the FLSA Settlement by returning their Claim Form.

[13] This number could increase if any State Law Class Members elect to opt-out of the Settlement.

65478175v.1
67542708v.3
67605737v.1

mediator, David A. Rotman, and fully exploring the strengths (and weaknesses) of the Parties' claims and defenses.

## (6) **The experience and views of counsel**

The Parties are represented by experienced wage and hour attorneys who regularly litigate class and collective actions throughout the United States. Counsel for the Parties represent to this Court that the settlement reached herein constitutes an excellent result, considering the facts at issue and the significant time and expense that would be incurred if a settlement was not reached.

> Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation. Thus, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.

*In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *2. Class Counsel—experienced wage and hour litigators accustomed to resolving claims on both collective and class action bases across the United States—are convinced that this settlement is fair and reasonable, both standing on its own and when viewed against other wage and hour settlements. *See* Declaration of Austin W. Anderson, attached as Exhibit B, ¶ 19.

## (8)    **The reaction of the Class Members to the proposed settlement**

The reaction of the Class Members to the proposed Agreement supports approval. As of the date of filing this motion, no Class Members have elected to opt-out of this Settlement or have lodged objections with this Court. *See* Exhibit A; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004). This is an overwhelmingly

65478175v.1
67542708v.3
67605737v.1

1   positive response. *See Churchill Village, LLC*, 361 F.3d at 577 (explaining that a court may

2   infer appropriately that a class action settlement is fair, adequate, and reasonable when few

3   class members object to it); *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-CV-00603-EJD,

4   2019 WL 11557486, at *7 (N.D. Cal. Oct. 3, 2019).

5

6       The *Hanlon* factors support the Agreement and provide a strong basis upon which

7   this Court can make a determination that the Agreement is fair and reasonable. *See Hanlon*,

8   150 F.3d at 1026.

9

10  **B.    No Indicia of Fraud or Collusion**

11      The Ninth Circuit has held that "[b]efore approving a class action settlement, the

12  district court must reach a reasoned judgment that the proposed agreement is not the

13  product of fraud or overreaching by, or collusion among, the negotiating parties . . ."

14  *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985). In this case, the

15  settlement negotiations were conducted during a formal mediation with David A.

16  Rotman—one of the most well-respected and preeminent wage and hour mediators in the

17  United States—and only after the exchange and rigorous analysis of ample payroll data.

18  The Parties contend there is no evidence of collusion in this case. *See Wood,* 2009 WL

19  10673479, at *5 (citing *Wal-Mart Stores, Inc.*, 396 F.3d at 116–17 (stating that "a

20  presumption of fairness, adequacy, and reasonableness may attach to a class settlement

21  reached in arms-length negotiations between experienced, capable counsel after

22  meaningful discovery") (citations omitted)). Counsel for the Parties' support the

23  Agreement as fair and reasonable, and all certify that it was reached at arm's length.

65478175v.1
67542708v.3
67605737v.1

1

## C.    THE REQUESTED SERVICE AWARDS ARE REASONABLE

2

As the Supreme Court recently recognized, a class representative "might receive a

3

share of class recovery above and beyond her individual claim." *China Agrigtech, Inc. v.*

4

*Resh*, ___ U.S. ___, ___, 138 S.Ct. 1800, 1811, n.7 (2018). Courts have discretion to award

5

service awards to named representatives. *See Rodriguez v. West Publishing Corp.,* 563 F.3d

6

948, 958 (9th Cir. 2009). These awards "are intended to compensate [collective]

7

representatives for work done on behalf of the class, to make up for financial or reputational

8

risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act

9

as a private attorney general." *Id*. at 958–59; *see also Staton*, 327 F.3d at 977  (in assessing

10

the propriety of an incentive award, courts consider "the actions the plaintiff has taken to

11

protect the interests of the class, the degree to which the class has benefitted from those

12

actions, . . . [and] the amount of time the plaintiff expended in pursuing the litigation.");

13

*Tarlecki v. Bebe Stores, Inc.*, No. C 05–1777 MHP, 2009 WL 3720872, at *5 (N.D. Cal.

14

Nov. 3, 2009). Specifically, courts may consider factors such as the actions the plaintiff

15

took to protect the interests of the class, the degree to which the class has benefitted, the

16

amount of time and effort the plaintiff expended in pursuing litigation, and any notoriety

17

or personal difficulties encountered by the representative plaintiff. *See Khanna v. Intercon*

18

*Sec. Systems, Inc.*, No. 2:09-cv-2214 KJM EFB, 2014 WL 1379861, at *10 (E.D. Cal. Apr.

19

8, 2014). "Incentive awards are particularly appropriate in wage-and-hour actions where

20

plaintiffs undertake a significant 'reputational risk' by bringing suit against their former

21

employers." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015)

22

(citation omitted).

23

24

25

26

27

28

In this case, Named Plaintiffs Phil Martinez, Lori Astwood, Casey Howard and Ben Azar all provided sworn affidavits attesting to the policies that Plaintiffs alleged underpaid them. All four Plaintiffs provided extensive information to Class Counsel that allowed them to advocate for the class as a whole and reach a resolution that benefited the Class Members. Moreover, each Named Plaintiff undertook significant reputational risk, which is ongoing.[14] *See Bailey v. Kinder Morgan G.P., Inc.,* No. 18-CV-03424-TSH, 2020 WL 5748721, at *9 (N.D. Cal. Sept. 25, 2020) (stating the reputation risk assumed by filing a wage and hour lawsuit against a former employer supports awarding an incentive award of $10,000). Moreover, without each of the Named Plaintiffs agreeing to act as a lead plaintiff

---

[14] For instance, when Class Counsel separately googled the names "Phil Martinez" and "Lori Astwood" information regarding their involvement in this lawsuit against their former employer was the fourth result found on the first page of the google results. *See* https://www.google.com/search?q=phil+martinez+web.com&oq=phil+martinez+web.com&aqs=chrome..69i57.3841j0j7&sourceid=chrome&ie=UTF-8; https://www.google.com/search?q=lori+astwood&oq=lori+astwood&aqs=chrome..69i57.3679j0j7&sourceid=chrome&ie=UTF-8.

When Class Counsel googled the term "Casey Howard lawsuit" information regarding Plaintiff Howard's involvement in this lawsuit against a former employer was the first result found. *See* https://www.google.com/search?biw=1245&bih=879&sxsrf=ALeKk00xvAnjiQYV7reduDxL1RB_HD01_Q%3A1610033435010&ei=Gyn3X-cQz8jmAo7bjoAD&q=casey+howard+lawsuit&oq=casey+howard+lawsuit&gs_lcp=CgZwc3ktYWIQAzIFCAAQzQI6BwgjEMkDECc6AggAOgIILjoNCC4QxwEQrwEQFBCHAjoECAAQCjoFCAAQyQM6BAguEEM6BggAEBYQHjoFCCEQoAE6BQghEKsCOgcIIRAKEKABUJwrWNQ0YKU2aABwAHgAgAGdAYgByAaSAQM3LjKYAQCgAQGqAQdnd3Mtd2l6wAEB&sclient=psy-ab&ved=0ahUKEwiniuH3kYruAhVPpFkKHY6tAzA4HhDh1QMIDQ&uact=5.

For Plaintiff Azar, information regarding his involvement was the eighth result when the term "Ben Azar lawsuit" was searched. *See* https://www.google.com/search?q=ben+azar+lawsuit&oq=ben+azar+lawsuit&aqs=chrome..69i57.2611j0j7&sourceid=chrome&ie=UTF-8.

65478175v.1
67542708v.3
67605737v.1

and have their names publicly posted at the top of a class/collective action lawsuit against a former employer, Class Counsel would have been unable to seek class certification of the State Law Classes, which provided substantial additional benefit to each State Law Class Member. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) ("Since without a named plaintiff there can be no class action, such [incentive award] compensation may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' nonlegal but essential case-specific expenses, such as long-distance phones calls, which are reimbursable"). This directly benefitted each Class Member. *See Noroma v. Home Point Financial Corp.*, No. 17-CV-07205-HSG, 2019 WL 5788658, at *10 (N.D. Cal. Nov. 6, 2019) (awarding $10,000 incentive award where plaintiff "added substantial value" to the case). Each Named Plaintiff is ready and available to provide additional information to the Court regarding their services performed on behalf of the Class. *See* Ex. B, ¶ 24.

Further the requested award, $2,500.00 for each of the four Named Plaintiffs, makes up a small two percent (2%) of the Gross Settlement Fund and is well below the amount courts in this Circuit find presumptively reasonable. *See Alvardo v. Nederend*, Civ. No. 1:088-1099 OWW DLB, 2011 WL 90228, at *5 (E.D. Cal. Jan. 11, 2011) (finding incentive award of $7,500 to each of the five representatives, constituting 7.5% of the total $505,058.60 settlement reasonable); *See also*, *e.g.*, *Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2014 WL 108420, at *3 (N.D. Cal. Jan. 10, 2014) (preliminarily finding an award of $5,000 as incentive payment for each of the six named plaintiffs presumptively reasonable); *Jacobs v. California State Auto. Ass'n Inter–Ins. Bureau,* No. C 07–0362

22

MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (noting that "a $5,000 [incentive] payment is presumptively reasonable"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) (collecting cases and explaining that $5,000 incentive award is presumptively reasonable and that awards typically range from $2,000–$10,000).

Class Counsel represent that the amount requested is reasonable in light of the benefit achieved for the Class, the substantial value added by the Named Plaintiffs, the effort expended by the Named Plaintiffs, the reputation risk assumed by the Named Plaintiffs, and is well within the amount courts within this Circuit find reasonable. Plaintiffs respectfully request the Court approve the requested incentive awards. *See* Ex. B, ¶ 23.

**E.   CLASS CERTIFICATION IS APPROPRIATE**

As detailed in the Parties' Joint Motion for Preliminary Settlement Approval (ECF No. 39), certification of a class action for settlement purposes is appropriate. *See* FED. R. CIV. P. 23(e). Those arguments remain and the Parties incorporate them herein.

**F.   CLASS ADMINISTRATION COSTS ARE REASONABLE**

ILYM Group, Inc. ("ILYM") was engaged by Counsel for the Parties to administer the terms of the Agreement. ILYM formatted the Class List for mailing purposes, checked all provided addresses using the National Change of Address Database prior to the initial mail-out, printed and mailed Claim Forms to the Class Members, and re-mailed undeliverable Claim Forms.  *See* Ex. A, ¶¶ 3–10. ILYM has been responsible for receiving the Class Members' Claim Forms, opt-out requests (none), and any objections to the Agreement (none). ILYM will further calculate the Participating Class Members' *pro rata* share of the settlement funds, calculating all necessary withholdings, setting up and

managing a Qualified Settlement Fund ("QSF") and distributing the Settlement Payments following final approval of the Settlement. ILYM will also be responsible for providing any returned funds to the *cy pres* recipient, National Lawyers Committee for Civil Rights.

As compensation for ILYM's services, the Parties seek approval of the $37,670.20 amount invoiced by ILYM for their services in administering the Agreement. The Parties agree that the requested amount is reasonable and commensurate with the costs associated with administering complex Rule 23 settlement agreements, such as this one.

## VI.
### CONCLUSION

For these reasons, the Parties respectfully request that the Court enter the Proposed Order submitted herewith GRANTING this Joint Motion for Final Approval of Class Action Settlement and FLSA Collective Action and determining the proposed Agreement is fair, adequate and reasonable.

DATED this 14th day of January, 2021.

LUBIN & ENOCH, P.C.
ANDERSON ALEXANDER, PLLC

By:  */s/ Austin W. Anderson*
Austin W. Anderson

Attorneys for Plaintiffs and the Class Members

SEYFARTH SHAW, LLP

By:  */s/ Gerald L. Maatman, Jr.*
Gerald L. Maatman, Jr.

Attorneys for Defendant

24

1

**<u>CERTIFICATE OF AUTHORITY</u>**

2

Plaintiffs' Counsel certifies that Defendant's Counsel has authorized the filing of

3

this joint motion, and approved the inclusion of their signature herein.

4

5

/s/ *Austin W. Anderson*
Austin W. Anderson

6

7

**<u>CERTIFICATE OF SERVICE</u>**

8

I hereby certify that on the January 14, 2021, I electronically transmitted the

9

10

foregoing document to the Clerk's Office using the ECF System for filing.

11

/s/ *Frances Lopez*
Frances Lopez

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

65478175v.1
67542708v.3
67605737v.1